**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| RITURAJ SINGH PANWAR, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff's, )<br>)<br>v. )<br>)<br>ACCESS THERAPIES, INC., RN STAFF, INC., )<br>d/b/a REHABILITY CARE, and )<br>RAMON VILLEGAS, )<br>)<br>Defendants. )<br>_____ )<br>)<br>RN STAFF, INC., )<br>)<br>Counterclaimant, )<br>)<br>v. )<br>)<br>RITURAJ SINGH PANWAR, )<br>)<br>Counterclaim Defendant. ) | Case No: 1:12-CV-00619-TWP-TAB |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Come now Defendant Access Therapies, Inc. ("Access Therapies"), Defendant and Counterclaimant, RN Staff, Inc. ("RN Staff") and Defendant, Ramon Villegas ("Villegas") (collectively "Defendants"), by counsel, and submit this Memorandum in Support of their Motion to Dismiss Plaintiff Rituraj Singh Panwar's ("Plaintiff") Second Amended Class Action Complaint ("Second Amended Complaint"). Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety because Plaintiff seeks to recover damages for alleged

1

violations of the Immigration and Nationality Act before exhausting Plaintiff's administrative remedies.[1]

Additionally, Count I – Violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") and Count II - Violation of RICO (RICO conspiracy) of Plaintiff's Second Amended Complaint should also be dismissed for failure to state a claim on the additional bases that Plaintiff has failed to either identify an enterprise or sufficiently plead the existence of an enterprise separate and apart from the Defendants themselves and because Plaintiff's claims do not pass the Seventh Circuit's family resemblance test.  Count VII – Violation of the Anti-Retaliation Provisions of the Fair Labor Standards Act ("FLSA") of Plaintiff's Second Amended Complaint should also be dismissed on the additional basis that it fails to state a claim because Plaintiff's allegations do not state a plausible claim under that statute.  Count V – Breach of Contract Under Common Law Plaintiff's Second Amended Complaint should also be dismissed on the additional basis that the Court will lack jurisdiction over this count.

## I. BACKGROUND

Under the Immigration and Nationality Act ("INA"), a United States employer can petition the federal government to allow aliens to work in the United States under an H-1B visa to perform services in a "specialty occupation."  Before an H-1B visa can be issued, the employer must first file a Labor Condition Application ("LCA") that makes certain statements required by 8 § U.S.C. 1182(n), including that the employee will be paid the greater of the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in

---

[1] That Plaintiff's Second Amended Complaint fails to state a claim because Plaintiff has not exhausted their administrative remedies is also at issue in Plaintiff's Motion to Dismiss RN Staff's Counter-Claim.  Defendants respectfully suggest that both pending motions to dismiss be adjudicated at the same time.

question or the prevailing wage level for the occupational classification in the area of employment, whichever is greater. 8 U.S.C. § 1182(n)(1)(A)(i)(I)-(II); 20 C.F.R. § 655.731(b).

Pursuant to its statutory authority under § 1182(n)(2)(A), the Secretary of Labor has established administrative procedures by which aggrieved nonimmigrant aliens working under H-1B visas can seek redress by filing a complaint with the U.S. Department of Labor ("DOL"). See 20 C.F.R. §655.805(a)(1) and (2). Section 1182(n) contains a comprehensive regulatory enforcement scheme that entrusts the investigation of complaints that aliens may have to the Secretary of Labor and the Attorney General. See 8 U.S.C. § 1182(n)(2)(A)-(n)(5)(A). Under this specific section of the statute, an aggrieved party must first file a complaint with the Wage and Hour Division of the DOL, which then makes a determination of the validity of the complaint. Id. If the party is dissatisfied with this decision, it can then make an appeal to an administrative law judge. 20 C.F.R. §§ 655.815, 655.820, 655.840. If this decision is also unsatisfactory to the aggrieved party, it can then petition for review to the Secretary of Labor. 20 C.F.R. §§ 655.840, 655.845. Only until these steps have been followed, may an aggrieved party pursue remedies in the appropriate United States District Court. 20 C.F.R. § 655.850. Remedies for an aggrieved party include reinstatement, back wages, or "other appropriate legal or equitable remedies." 20 C.F.R. § 655.810(e)(2).

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Reger Dev., LLC v.*

*National City Bank*, 592 F.3d 759, 763-764 (7th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555-556, 1965; *see also Reger Dev.*, 592 F.3d at 763-764; *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007.

### III.   ARGUMENT

**A.   Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted because Plaintiff has not exhausted his administrative remedies under the INA.**

The existence of a private right of action is a question of whether a plaintiff has stated a claim upon which relief can be granted. *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 647 (S.D. N.Y. 2000). When a claim involves a comprehensive administrative scheme that a party is required to exhaust, the claim is analyzed as a failure to state a claim. *Alves v. Masters Entm't Group, LLC*, 2008 WL 4452145 (N.D. Ind. 2008), at *2.

In his Second Amended Complaint, Plaintiff makes the following allegations against Defendants:

- Mr. Panwar was not paid wages for periods of non-productive time ("benched") in violation of H-1B regulations", 20 C.F.R. § 655.731(c)(6). Second Amended Complaint (Dkt. #63), ¶¶ 16, 38 and 40.

- Mr. Panwar was not paid the actual wage or prevailing wage for his period of client work "in violation of H-1B wage requirements." Second Amended Complaint, ¶ 40.

- The wages that Mr. Panwar was paid "breach[ed] the terms of the LCA" filed on his behalf. Second Amended Complaint, ¶39.

4

- Plaintiff's are to required pay H-1B petition application fees (or at least a portion of the fees), which "violates the Department of Labor's H-1B regulations", 20 C.F.R. § 655.731(c)(9)(iii)(C). Second Amended Complaint, ¶ 26.

- Plaintiff's are to required pay $20,000 if they fail to complete a two year employment term, which "violates the Department of Labor's H-1B regulations", 20 C.F.R. § 655.731(c)(10)(i). Second Amended Complaint, ¶ 26.

- Defendants never provided Mr. Panwar a copy of his LCA in violation of DOL regulations. Second Amended Complaint, ¶ 34.

- "Defendants' certifications to the federal government have proven false and fraudulent." Second Amended Complaint, ¶ 3.

Despite technically pleading under several alternative theories of law, as shown above, the substance of the claims in Plaintiff's Second Amended Complaint is Defendants' alleged violations of the INA.[2] Plaintiff cannot avoid the administrative exhaustion requirements in the INA simply by creatively pleading different causes of action. Plaintiff's attempt to recover damages in this Court based upon alleged violations of the INA is clearly an attempt to avoid the specific administrative requirements found in the INA. Stated most simply, Plaintiff cannot maintain any action against Defendants to recover damages that would require a determination of a violation of the INA. In order to prevail on their claims in this action, Plaintiff must prove that Defendants have violated the INA, which determination must first be made by the DOL, through a procedure clearly established by Congress.[3]

---

[2] *Also see*, Complaint at ¶1 (this case involves … wages the federal government requires."; ¶¶2-5 (extensive discussion of H-1B process and regulations and allegations of violations of same); ¶¶14-20 (section entitled "H-1B Visa Program Background"); ¶¶21-23 (section entitled "Federal Government Concerns Regarding H-1B Employment Fraud"); ¶¶24-40 (section entitled "Defendants' Fraudulent Scheme"); ¶47 (applicable "questions of law" include whether Defendants engaged in a scheme to defraud H-1B employees by underpaying required wages and making the employees pay visa fees.

[3] Examples showing that Plaintiff's claims require a determination under the INA include, but are not limited to:, Plaintiff's RICO allegations of fraudulent representations to the federal

Courts have consistently held that a plaintiff must first exhaust their administrative remedies before filing a suit alleging violations of § 1182(n). First limiting the enforcement of claims alleging violations of the INA to the DOL is supported by multiple cases that have held that there is no private cause of action under the INA. *See Alves*, 2008 WL 4452145 at *4; *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d at 647-648; *Zhang v. China Gate, Inc.*, 2007 WL 2686834, at *3 (W.D. Was. 2007); *Shibeshi v. Philander Smith College*, 2011 WL 4529455 at *2.

In *Alves*, the plaintiff alleged breach of employment emanating from and based upon documents relating to an H-1B visa (including failing to pay the wage promised him). *Alves*, 2008 WL 4452145 at *2. The Court held that the principle underlying the ruling in cases that no private cause of action for violating the INA applied to Alves' claims and dismissed the breach of employment claim. In *Shibeshi*, the plaintiff initially contended that the defendant had violated the INA, but in response to a motion to dismiss based upon no private action, amended his complaint to bring a claim for breach of employment. Shibeshi, 2011 WL 4529455 at *1. The Court dismissed the claim, noting that Shibeshi (like Plaintiff) was in the case at bar attempting to circumvent the non-availability of a private cause of action under the INA. Id. at *2.

---

government (§1182(n)(2)(A)(C) of the INA requires claims based on a "misrepresentation of material fact in an application" to be first addressed by the DOL); Plaintiff's RICO and Indiana statutory wage law allegations of underpayment of Mr. Panwar's wages (any failure to meet a condition in an LCA, including failure to pay the actual wage or prevailing wage, or any allegation relating to benching, must first be brought before the DOL pursuant to §1182(n)(2)(A));  Plaintiff's allegations that Defendants threatened him (covered by the INA, *see* 20 C.F.R. § 655.801(a)(1)). Plaintiff's TVPA allegation that Defendants obtained labor and services of Plaintiff by means of abuse or threatened abuse of law or legal process (resolution requires a determination of whether Defendants abused the legal processes set forth in the INA); Plaintiff's unjust enrichment allegation that Plaintiff paid a portion of his visa application fee in "breach of the H-1B regulations" (requires a determination under the INA); Plaintiff's FLSA allegations (retaliation claims by H-1B aliens are governed by the INA, s*ee* 20 C.F.R. § 655.801.)

Defendant anticipates that Plaintiff will assert that these above-referenced cases are inapplicable to his claims because the Counts of Plaintiff's Second Amended Complaint do not specifically reference the INA, but assert claims under other statutes and common law.  However, despite the attempt at creative pleading, Plaintiff's claims are clearly based upon violations of the INA and should therefore be dismissed.  In *Tuli v. Global IT, Inc.*, Tuli, an H-1B immigrant asserted a claim under 18 U.S.C. §§ 1589-1592 and 1595 (the Victims of Trafficking and Violence Protection Act ("TVPA")) against his employer. *Tuli v. Global IT, Inc.*, (E.D. VA. Aug. 6, 2012) at *1 (copy attached hereto as Exhibit 1).  The employer moved to dismiss Tuli's TVPA claim on the basis that Tuli had not exhausted his administrative remedies under the INA. *Id.* at *1-2.[4]  In granting Global IT's motion to dismiss, the Court held that although Tuli alleged violations of the TVPA, "his complaint consisted almost entirely of allegations regarding the H-1B visa program and its requirements." *Id.* at *2.  The Court dismissed Tuli's TVPA claim holding that "despite technically pleading under the TVPA, Plaintiff may not avoid the administrative exhaustion requirements simply by pleading a cause of action different than that which makes up the substance of the Complaint." *Id.*[5]  Plaintiff's attempts to creatively plead his INA claims under other

---

[4] The *Tuli* order is not available on Westlaw.  Defendants' counsel located the order after conducting a search in Westlaw under Plaintiff's counsel's name, which search resulted in only identifying Tuli's complaint (Plaintiff's attorneys also represent Tuli).  A copy of the order was then obtained via a search for the *Tuli* case on the Eastern District of Virginia's docket via PACER.  Defendants' counsel conducted a similar search on Westlaw prior to responding to Plaintiff's Motion to Dismiss RN Staff's Counter-Claim and the *Tuli* complaint did not appear.  Therefore, upon information and belief, the *Tuli* order was not available on Westlaw at the time Defendants responded to Plaintiff's Motion to Dismiss.  Defendants respectfully request that the Court consider *Tuli* as additional authority with regard to Plaintiff's Motion to Dismiss and are contemporaneously submitting a separate notice of additional authority to the Court with regard to the briefing on that motion.

[5] The *Tuli* Court dismissed the case based upon lack of subject matter jurisdiction under Rule 12(b)(1). *Id.* at *2.  As discussed above, the 7th Circuit has held that analysis of a motion to dismiss based upon failure to exhaust administrative remedies shall be interpreted under a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Alves*, 2008 WL 4452145 at *2 (defendant's motion to dismiss in Alves was made pursuant to lack of subject matter

statutes and laws are the same unsuccessful strategy employed by Tuli.  Based upon the *Tuli* Court's analysis, Plaintiff's Second Amended Complaint should be dismissed.

Plaintiff's reliance upon alleged violations of the INA in support of his claims in is what distinguishes this action from the cases upon which Plaintiff relies and undermines Plaintiff's attempts to distinguish the cases relied upon by Defendants.  In *Goel v. Patni Computer Systems, Inc.*, 2008 WL 4185691 (C.D.Ill. 2008), the Court held that Goel's claims should not be dismissed based upon lack of a private cause of action for violations of the INA.  In reaching its decision, the Court noted that plaintiffs did "not tie their claims to a provision of the INA." Id. at *3.  *Goel* is distinguishable from this action because Plaintiff has clearly tied his claims to multiple provisions of the INA.  In Goel, the plaintiffs noted that their state common law claims were "not based upon any violation of the INA and do not rely upon any violation of the INA for proof of any element of such claims." (Goel Memorandum of Law in Support of Plaintiffs' Response to Motion to Dismiss, p. 7 (attached hereto as Exhibit 2)).  Contrary to *Goel*, Plaintiff's Second Amended Complaint in this action consistently and overwhelmingly relies upon alleged violations of the INA to support Plaintiff's claims.

Plaintiff will most likely cite to *Nunag-Tanedo v. East Baton Rouge Parish School Board*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011) and *Ward v. Chanana*, No. C 07-06290, 2008 WL 5383582 (N.D. Cal. 2008) in opposition to this motion.  However, neither *Nunag-Tanedo* nor *Ward* is persuasive because neither case involved claims relying upon violations of the INA.  In *Nunag-Tanedo*, the Court held that the plaintiffs sufficiently stated a claim under 18 U.S.C. §1589(a)(3) of the TVPA and under RICO.

---

jurisdiction under Rule 12(b)(1) and the Court converted the motion to a Rule 12(b)(6) motion). Regardless, the *Tuli* Court's analysis that a plaintiff may not avoid the administrative exhaustion requirements of the INA via creative pleading is on point and equally applicable under either Rule.  In the event this Court determines that there is substantive difference based upon which Rule is applied, Defendants request that this motion be treated as being filed alternatively under Rule 12(b)(1).

However, the order in *Nunag-Tanedo* fails to make reference to any specific alleged violations of the INA by the plaintiff. *Nunag-Tanedo*, 790 F. Supp. 2d at 1136-1148. As such, *Nunag-Tanedo* does not support Plaintiff's assertion that an individual can make a claim under the TVPA or RICO based upon alleged violations of the INA. *Ward* is similarly immaterial as the underlying allegations supporting Ward's RICO claims were also not based upon alleged violations of the INA. *See Ward*, 2008 WL 5383582 at *1-3.

Plaintiff may also attempt to rely on section 212(n)(2)(I) of the INA argue that the INA's administrative remedies do not preclude claims based upon other statutes alleging underlying violations of the INA. This section provides that "nothing in this subsection shall be construed as superseding or preempting any other enforcement-related authority under this chapter (such as the authorities under section 1324b of this title), or any other Act. However, this section does not provide authority for individuals to pursue private causes of action under other statutes based upon INA violations. The provision only prohibits superseding or preempting of any enforcement-related authority of the government under any other act and does not address an individual's right to pursue a claim. *See Shah*, 126 F.Supp.2d at 649 ("this provision does not treat a complainant's rights, but rather the scope of the government's enforcement authority.")

Plaintiff in this action also asserted in its briefing relating to RN Staff's counter-claim that the INA and its regulations (specifically 20 C.F.R. §655.742(c)(7)(i)) recognize that H-1B workers can assert non-INA federal statutory claims "by acknowledging that 'benched' H-1B workers are entitled to the statutory wage jurisdiction of the FLSA." However, this assertion is incorrect. The regulation provides only that "in all cases the H–1B nonimmigrant must be paid the required

9

wage for all hours performing work within the meaning of the Fair Labor Standards Act." This statement in no way indicates that an H-1B employee can make a benching claim under the FLSA, but only requires that H-1B employees must also be paid required "wages" as defined within the FLSA. Defendants are not asserting that H-1B employees are precluded from making any wage claim under other statutes, but that Plaintiff is precluded from making wage claims that rely upon alleged violations of the INA. Why would any plaintiff pursue administrative remedies under the INA if he were able to more quickly seek relief via a creatively plead private action? Because Plaintiff's wage claims in this action rely upon alleged violations of the INA, the administrative remedies provided by the INA for the redress of these claims must first be exhausted.

None of the statutes or common law upon which Plaintiff relies in the Counts of his Second Amended Complaint provide for a remedy for his INA based claims. Stated another way, recovery on any counts of Plaintiff's Second Amended Complaint depends upon the provisions of the INA. For example, the RICO, TVPA and Indiana Wage statutes and common law on unjust enrichment and breach of contract do not require that:

- An employee must be paid wages for certain periods of non-productive ("benched") time. [6]

- An employee must be paid the actual wage or prevailing wage for his period of client work (as set forth in an LCA).

- An employee cannot be to required pay H-1B petition application fees (or even portion of the fees).

- An employee cannot be required to pay an amount to his employer for ceasing employment prior to a certain date.

---

[6] The contract attached to Plaintiffs' original Complaint does not contain any provision requiring that Plaintiff be paid for benched time, a prevailing wage, etc.

- An employer must provide its employee with a copy of the employee's LCA.

Plaintiff must rely upon the INA to make these claims. Because Plaintiff's Second Amended Complaint consists almost entirely of allegations regarding the INA (the H-1B visa program and its requirements), Plaintiff can only pursue those claims after exhausting the administrative remedies under the INA. For these reasons, Plaintiff's Second Amended Complaint should be dismissed.

**B.   Counts I and II of Plaintiff's Second Amended Complaint fail to state a claim upon which relief may be granted because Plaintiff's Original Complaint does not identify an enterprise nor pass the family resemblance test.**

Plaintiff's RICO claims, Counts I and II of Plaintiff's Second Amended Complaint, should be dismissed on the additional bases that Plaintiff has failed to either identify an enterprise or sufficiently plead the existence of an enterprise separate and apart from the Defendants themselves and that Plaintiff's claims do not pass the Seventh Circuit's family resemblance test.

RICO prohibits a "person ... associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Plaintiff alleges the persons associated with the enterprise are Access Therapies and RN Staff - "Defendants each constituted a 'person' within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c). Second Amended Class Action Complaint, 55. Plaintiff is correct in that for purposes of RICO a "person" need not be a natural person, 18 U.S.C. § 1961(3), so Defendants agree that Access and RN Staff are persons within the meaning of the Act. *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987); *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir. 1984).

However, Section 1962(c) also contains a distinctiveness requirement — the enterprise must be separate and distinct from the defendant. *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984) *aff'd*, 473 U.S. 606, 105 S. Ct. 3291, 87 L. Ed. 2d 437 (1985).  In this case, Plaintiff's pleadings are in direct contradiction to this proposition.  After identifying Access Therapies and RN Staff as persons, Plaintiff goes on to allege those same persons "constitute - an 'enterprise' within the meaning of 18 U.S.C. 1961(4)" and that these Defendants were "associated-in-fact."  Second Amended Class Action Complaint, ¶ 56.  Since Defendants cannot be both the persons and the enterprise and since Plaintiffs do not even allege the existence of an enterprise separate and apart from the Defendants themselves, Plaintiff's RICO claims fail to properly state a claim under RICO.

RICO also demands that a defendant do more than simply use its agents or affiliates to perpetrate racketeering acts. *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323–24 (7th Cir.1998).  The defendant must instead use "its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." Id. at 1324 (*citing Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir.1997)).  In *Fitzgerald*, Judge Posner articulated a test for courts to apply when "there is a danger of [a broadly worded statute] being applied to situations absurdly remote from the concerns of the statute's framers."  First, the court must "identify the prototype situation to which the statute is addressed."  Once identified, the court must "determine how close to the prototype the case before the court is—how close, in other words, the family resemblance is between the prototypical case and the case at hand."

In *Fitzgerald*, the Court identified the prototypical § 1962(c) case as "one in which a per- son bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person." Finding that *Fitzgerald* not fit the prototype, the Court proceeded to step two, and attempted to divine the case's degree of removal. One "step away" from the prototype, the Court determined, is a scenario "in which the criminal uses the acquired enterprise to engage in some criminal activities but for the most part is content to allow it to continue to conduct its normal, lawful business." Another step removed occurs when "the criminal seizes control of a subsidiary of a corporation and perverts the subsidiary into a criminal enterprise that manages in turn to wrest sufficient control or influence over the parent corporation to use it to commit criminal acts." Though the Seventh Circuit had previously acknowledged RICO causes of action that were as far as two steps removed from the prototype, the Court felt that the case before it would be a third step removed from the prototypical RICO case, and was unwilling to extend the RICO test so far.

The Seventh Circuit has held that a RICO claim fails this "family resemblance" test where a corporation merely does business through agents rather than through employees. *Fitzgerald*, 116 F.3d at 227. In other words, where the role of a corporation's agents in perpetrating the alleged racketeering acts "is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the [defendant corporation] plus its agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute." *Id.* at 228. Use of the enterprise must rather provide defendants with "an additional power to evil" - a power that the defendant would

13

otherwise not possess. *Id.* at 227; *see also Rowe v. Bankers Life & Cas. Co.*, 09-CV-00491, 2010 WL 3699928 (N.D. Ill. Sept. 13, 2010). The prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over. *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2532-33, 69 L.Ed.2d 246 (1981); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 457 (7th Cir.1982).

The acts complained of in this case cannot be thought the work of a RICO enterprise and do not fit the prototype set out by the Seventh Circuit. The owners of Access and RN Staff were simply exercising power that is inherent in these entities. Moreover, there is no allegation that by using separate entities these Defendants somehow made it easier to commit or conceal the acts of which Plaintiff complains. For example, Plaintiff complains that Defendants made "false representations to the federal government" in the Labor Condition Applications filed by Defendants on behalf of H-1B workers. However, there is no allegation that the alleged enterprise (i.e., Access Therapies and RN Staff working together) that Access Therapies or RN Staff made representations to the government together which they could not have made on their own. In other words, there is no allegation the alleged enterprise provided Defendants with "an additional power of evil." Moreover, even if, as Plaintiff alleges, Access Therapies made the allegedly false assertion that Access Therapies "did business as Rehability Care" and even if, as Plaintiff alleges, he was first presented with an Access Therapies employment agreement and then later presented with a Rehability Care employment agreement, there is no allegation that the allegedly false

14

assertion or change in employer on the employment agreement in any way furthers the alleged pattern of racketeering or allowed Defendants to do that which they could not otherwise do on their own.

C. **Count VII of Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted because Plaintiff's Original Complaint did not make a claim under the FLSA.**

In Count VII of Plaintiff's Second Amended Complaint, Plaintiff alleges that Defendants violated the anti-retaliation provisions of the FLSA at 29 U.S.C. § 215(a)(3) by terminating Mr. Panwar. 29 U.S.C. § 215(a)(3) provides that it is unlawful for any person to discharge any employee because such employee has filed a complaint or instituted any proceeding "under or related to this chapter." Plaintiff filed his original Complaint on May 8, 2012. Plaintiff alleges that his employment was terminated on May 10, 2012 in response to his filing of his original Complaint and that such termination constituted a violation of the FLSA because he filed a complaint related to 29 U.S.C. §206.

Plaintiff's retaliation claim fails to state a claim upon which relief can be granted because, even assuming Plaintiff's allegation that he was terminated in response to his filing the original Complaint is true, his original complaint was not instituted under or relating to any alleged violation of the FLSA. Plaintiff's original Complaint contained no FLSA claim, nor any reference to the FLSA. Plaintiff's original Complaint (Dkt. #1). In pleading his retaliation claim, Plaintiff's Second Amended Complaint admits that Plaintiff alleged in his original Complaint that Defendants failed to pay any wages to him during benched time in violation of 20 C.F.R. § 655(c)(7)(i), which addresses wage obligations for H–1B non-immigrants in nonproductive status under the INA.

15

Despite admitting that his original Complaint asserted a wage claim under the INA, Plaintiff attempts in his Second Amended Complaint to re-characterize the claim in his original Complaint as a failure to pay minimum wage under § 206 of the FLSA. However, Plaintiff's allegation that Defendants' did not pay him wages for his benched time is not "related to" a failure to pay minimum wage. §206 of the FLSA provides only that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at" a certain rate. §206 of the FLSA contains no provision requiring wages to be paid during benched periods. As Plaintiff's original Complaint was not instituted under or relating to any alleged violation of the FLSA, his retaliation claim must be dismissed.[7]

D. **Plaintiff's breach of contract claim should be dismissed based upon lack of jurisdiction.**

Plaintiff may assert that some portion of his breach of contract claim should not be dismissed. However, any breach of contract claim against RN Staff and Access Therapies[8] should be dismissed because, if Defendants' Motion is granted, this Court would lack jurisdiction over such claim.

Plaintiff asserts federal jurisdiction under 28 U.S.C. § 1331 (federal question) based upon its RICO claim and 28 U.S.C. § 1332 (diversity). Second Amended Complaint, ¶ 10. If Plaintiff's RICO claims are dismissed, then his jurisdictional basis is limited to diversity. Plaintiff replies upon the Class Action Fairness Act (Section 1332(d)(2) of Title 28) to assert jurisdiction in this action by alleging diversity of the parties and an amount in controversy exceeding $5,000,000. However, Plaintiff has

---

[7] Plaintiff could have sought redress by filing a complaint with the DOL under the INA as retaliation claims by H-1B employees are governed by the INA. *See* 20 C.F.R. § 655.801.
[8] Plaintiff's Second Amended Complaint does not assert a breach of contract claim against Villegas.

16

not alleged his breach of contract claim to sufficiently satisfy class requirements under Rule 23(b)(3). Specifically, Plaintiff has not sufficiently asserted that questions of fact are common under the breach of contract claim because Plaintiff has not alleged that the class members' contracts are sufficiently similar such that the contract claims would not assert claims based upon individualized issues of fact.  *See, generally, Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004).

Assuming Plaintiff's breach of contract claim is not properly plead as a class claim, in order to maintain his claim in Federal Court, Plaintiff must allege that his breach of contract damages, alone, exceed $75,000 under 28 U.S.C. § 1332(a). Plaintiff has not so plead, and therefore, his breach of contract claim should be dismissed for lack of subject matter jurisdiction.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendant Access Therapies, Inc., Defendant and Counterclaimant, RN Staff, Inc. and Defendant, Ramon Villegas respectfully request that the Court dismiss Plaintiff's Second Amended Class Action Complaint.

Dated:  November 15, 2012             RILEY BENNETT & EGLOFF, LLP

s/ *Jeffrey B. Fecht*
Bryce H. Bennett, Jr. (No. 2681-49)
bbennett@rbelaw.com
Jeffrey B. Fecht (No. 20875-29)
jfecht@rbelaw.com
G. John Cento (No. 21571-49)
jcento@rbelaw.com

Attorneys for Defendants,
Access Therapies, Inc.,
RN Staff, Inc. d/b/a Rehability Care
and Ramon Villegas

---

[9] To be clear, in this section, RN Staff and Access Therapies are asserting a "facial" motion to dismiss Plaintiff's breach of contract claim based upon the allegations of Plaintiff's Second Amended Complaint.  All Defendants reserve the right to subsequently assert a "factual" challenge to whether Plaintiff can satisfy any amount in controversy requirements set forth in 28 U.S.C. § 1332.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing *Defendants' Memorandum in Support of Motion to Dismiss* was filed electronically on this 15th day of November, 2012. Notice of this filing will be sent to the following by operation of the Court's electronic filing system or U.S. Mail:

| | |
|---|---|
| Daniel Kotchen | Michael F. Brown |
| Justin T. Ervin | Peterson Berk & Cross, S.C. |
| Kotchen & Low LLP | 200 E. College Avenue |
| 2300 M Street NW, Suite 800 | Appleton, Wisconsin 54912 |
| Washington, DC 20037 | mbrown@pbclaw.com |
| dkotchen@kotchen.com | |
| jervin@kotchen.com | |

Andrew P. Wirick
Hume Smith Geddes Green
    & Simmons, LLP
54 Monument Circle, 4th Floor
Indianapolis, Indiana 46204
awirick@humesmith.com

                                      s/ *Jeffrey B. Fecht*
                                      Jeffrey B. Fecht