UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RITURAJ SINGH PANWAR on behalf of      )
himself and all others similarly situated,      )
                                                )
                              Plaintiff,         )
                                                )
              vs.                               )
                                                )
ACCESS THERAPIES, INC,                  )          No. 1:12-cv-619-TWP-TAB
RN STAFF, INC. doing business as         )
REHABILITY CARE,                         )
RAMON VILLEGAS,                         )
                                                )
                              Defendants.        )

**REPORT AND RECOMMENDATION ON MOTIONS FOR SANCTIONS,
ATTORNEY'S FEES, AND TO STRIKE ATTORNEY'S FEES**

## I. Introduction

The discovery dispute before the Court in this case is relatively straightforward.  Plaintiff

Rituraj Singh Panwar requested production of certain documents that were not produced despite

repeated discovery requests, party conferral, and Court intervention.  [Docket Nos. 60, 87, 113,

150.]  Consequently, Plaintiff filed a motion for sanctions under Fed. R. Civ. P. 37.  The Court

held oral argument on this motion, then took it under advisement to give the parties another

opportunity to resolve the discovery dispute or, if necessary, submit additional briefing.  The

parties did not resolve the dispute and Plaintiff filed supplemental briefing for his motion for

sanctions and a motion for attorney's fees.  In turn, Defendants Access Therapies, Inc., RN Staff

Inc., and Ramon Villegas filed a motion to strike the motion for attorney's fees.  [Docket No.

133.]

1

As discussed below, Defendants improperly failed to produce certain discovery and, as a result, Plaintiff is entitled to reasonable attorney's fees and costs. The problem, however, is that Plaintiff's request for relief is unreasonable. Plaintiff seeks a judgment against the Defendants, or alternatively, an adverse inference. As discussed below, the Magistrate Judge finds such extreme relief is unwarranted. Plaintiff also seeks fees and costs, which is appropriate. However, Plaintiff's request for $163,254.96 is not reasonable. In fact, such a staggering request could arguably be viewed as sanctionable. The Magistrate Judge recommends that Plaintiff's motion for sanctions be granted [Docket Nos. 97, 114] and that Plaintiff be awarded reasonable fees and costs [Docket Nos. 122, 140] related to Defendants' discovery missteps. Under the circumstances here, reasonable fees and costs are $28,431.46. Finally, the Magistrate Judge recommends that Defendants' motion to strike the motion for attorney's fees be denied. [Docket No. 133.]

## II. Background

Defendants recruit and hire individuals from India, the Philippines, and other foreign countries to work in the United States at healthcare companies. Part of the recruitment process is securing H-1B visas for foreign workers, which enables them to work in the United States. Pursuant to federal law, workers with H-1B visas must be paid a minimum "prevailing wage." This lawsuit alleges that Defendants are engaged in a scheme to defraud these foreign workers of a minimum prevailing wage. Defendants deny this allegation.

On June 14, 2012, Plaintiff served Defendants with their first set of document requests. [Docket No. 98 at 2.] After not receiving a response, Plaintiff contacted Defendants on July 20, 2012, and the parties ultimately agreed to a thirty-day extension to produce the documents. On July 23, 2012, Defendants served responses to the document requests. With the exception of one

request, Defendants agreed to produce all responsive documents.  The parties later agreed to another thirty-day extension with the understanding that documents would be produced on a rolling basis.  Despite these agreements, Defendants did not produce all responsive documents.

The parties continued to confer in September and October to no avail.  The Court held a telephonic status conference on October 16, 2012, to address outstanding discovery. At the conclusion of the conference, the Court ordered Defendants to produce responsive documents by November 20, 2012.  On November 20, 2012—the day responsive documents were due—Defendants sought to extend the deadline to November 27, 2012.  The Court granted the request.  On November 28, 2012, Defendants provided Plaintiff with access to a shared folder where only some of the responsive documents were uploaded.

The parties scheduled a Rule 30(b)(6) deposition for December 6, 2012, to address Defendants' "efforts to preserve, collect, and produce documents."  [Docket No. 98 at 4.]  The night before the deposition, Defendants informed Plaintiff that Defendants' designee would not attend the deposition.  The deposition was rescheduled and Plaintiff's counsel incurred a $150 flight cancellation fee that Defendants' counsel apparently agreed to pay but did not.  Following the deposition, Plaintiff "had serious concerns about the Defendants' limited search for and production of documents and continued violation of the Court's October 16 and November 27 Orders" and sought relief from the Court.  [Docket No. 98 at 6.]  The Court ordered in part:

> that Defendants attorneys shall actively coordinate, supervise, and, where possible, help conduct a search and collection of all documents responsive to Plaintiff's Requests for Production of Documents from Defendants' files (including the files of agents), computers, and servers, including all computers and servers used by Defendants' Indianapolis-based employees, and shall promptly produce such documents to Plaintiff's counsel.

[Docket No. 87 at 1.]  Sometime after this order, Defendants disseminated an email, as part of its "Signature Campaign," to its employees requesting them to sign a document agreeing to:

> release and forever discharge Access Therapies, Inc. and /or RN Staff, Inc. from
> any claim I may have related in any way to the payment of wages to me by
> Access Therapies, Inc. or RN Staff, Inc. from today and the prior period back to
> the start of my employment, including any claim related in any way to prevailing
> wages or nonproductive time for H-1B workers for the same period.

[Docket No. 112-1 at 23.]

The parties apparently continued to work together with little progress until April 2013 when Plaintiff told Defendants that he intended to seek sanctions. Defendants then began producing additional documents, including some 16,000 pages. Despite Defendants' latest production, Plaintiff still claims that "discovery remains woefully incomplete." [Docket No. 98 at 6.]

A primary reason Defendants cite for their problems in timely and completely responding to Plaintiff's discovery requests are health problems of Defendants' principal, Harvinder Dhani. His health started deteriorating in February 2013. Initially, Dhani's symptoms prevented him from working at full capacity. Over the subsequent months, Dhani was admitted to the hospital a number of times with little improvement. By August 2013, he had undergone complex spinal reconstruction and his condition would not allow him to return to work for six to nine months. [Docket Nos. 119 at 11; 119-3 at 1.] Nevertheless, Defendants maintain that they have complied with their discovery obligations, that the Court's ruling on Defendants' motion to dismiss largely moots discovery issues, and that Plaintiff's claim for fees and costs is "outrageous." [Docket No. 134 at 7.]

**III. Discussion**

*A. Fed. R. Civ. P. 37 Sanctions*

Plaintiff seeks sanctions against Defendants pursuant to Fed. R. Civ. P. 37. Plaintiff does not seek sanctions against Defendants' counsel "as he has made good-faith efforts to comply

with requirements of discovery and the Orders."[1]  [Docket No. 98 at 1.]  Rule 37(b)(2)(A)

provides that if a party or party's officer, director, or managing agent fails to obey an order to

provide discovery, the court where the action is pending may issue further just orders.  Such

orders may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part:
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. Pro. 37(b)(2)(A).  Rule 37(b)(2)(C) further provides:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Once the moving party has demonstrated failure "to obey an order to provide or permit

discovery," the Court is guided by several factors in deciding to impose sanctions: (1) the

offending party's culpability, (2) the prejudice or surprise to the party against whom the evidence

is offered, (3) the ability of the party to cure the prejudice, and (4) the likelihood of disruption to

the trial.  *See David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003).

---

[1]  Indeed, Defendants' counsel requested that the February 13, 2013, order compel counsel to assist Defendants in document production in an effort to press the increasingly uncooperative Defendants to produce discovery pursuant to the Court's order.  Plaintiff's motion for sanctions thus appears properly focused against Defendants and not Defendants' counsel, who attempted to comply with the discovery requests and Court orders despite the client's discovery missteps.

1. Breach of duty to produce documents

It is beyond dispute that Defendants did not timely produce documents to Plaintiff's request. Defendants also did not produce documents after the parties agreed to extensions. Most relevant to Rule 37(b)(2)(A), however, is that Defendants did not comply with the Court's October 16, 2012, order directing them to produce responsive documents.

On October 16, 2012, the parties appeared by counsel for a telephonic status conference to address "the time period for Defendants' document production and the timing of that production." [Docket No. 60.] The Court ruled that "Plaintiffs are limited in time to the four-year proposed class definition" unless they amend the complaint to include allegations dating back six years. [*Id*.] Addressing the timing of production, the Court stated that Defendants must produce responsive documents by November 20, 2012. At Defendants' request, this deadline was later extended to November 27. [Docket Nos. 73, 76.]

Defendants argue that the October 16 order does not specify which documents should have been produced on November 20 and that their "mass" but incomplete production in November 2012 should be sufficient to satisfy the Court's October 16 order. [Docket No. 103 at 12.] The Magistrate Judge disagrees. The Court's order did not say that "some" or "most" of the responsive documents must be produced. Rather, the Court explicitly stated without any exception that responsive documents must be produced.[2]

Notwithstanding this shortcoming, Defendants acknowledge that they still have not produced four LCAs, six I-797s, eleven payroll records, and ten employment agreements.

---

[2] Defendants also note that the February 13, 2013, order only directed counsel to assist with production but did not order Defendants to produce anything. [Docket No. 103 at 12.] The Court had already ordered production of responsive documents, thus it did not need to restate that in the February 13 order. On the contrary, the February 13 order reflects that Defendants had not complied with the October 16 order. [Docket No. 87.]

[Docket No. 103 at 4.] Furthermore, Plaintiff identifies several deficiencies that still exist in Defendants' production. These deficiencies largely stem from Defendants' failure to adequately identify all H-1B workers. While the parties do not dispute that Plaintiff's list of 407 potential H-1B workers is overinclusive, Defendants' list of 180 H-1B workers is not exhaustive and it is apparent that Defendants have not identified all H-1B workers or taken the necessary steps to do so. For instance, two H-1B workers who are not part of Defendants' list recently contacted Plaintiff's counsel. These individuals were H-1B employees during the relevant time period and claim they were underpaid. [Docket No. 108 at 5.] By failing to explain what steps they have taken to identify H-1B workers, Defendants have further complicated the process of identifying all H-1B workers.

Plaintiff contends that Defendants' list of H-1B employees is inaccurate because they did not review certain records that they are required to maintain pursuant to federal law. *See* 20 C.F.R. 655.760 ("The employer shall make a filed labor condition application and necessary supporting documentation available for public examination at the employer's principal place of business in the U.S. or at the place of employment within one working day after the date on which the labor condition application is filed with DOL."). To create an accurate list, Plaintiff suggests that Defendants consult with legal counsel that helped prepare some of the H-1B petitions and that they review relevant payroll records. [Docket No. 108 at 6.]

Failing to take adequate steps to identify employers skewed the entire production as it is necessary to identify H-1B workers to know what employment documents and emails to produce. Thus, Defendants' assertion that they substantially complied with their discovery obligations is unpersuasive. Even if the Court accepted Defendants' representation that they are

in substantial compliance, it does not negate the fact that they did not produce four LCAs, six I-797s, eleven payroll records, and ten employment agreements.

Plaintiff also argues that Defendants did not produce relevant emails between Defendants and H-1B workers. Defendants acknowledge that they did not produce many emails, but assert that their primary method of communication with H-1B workers was by telephone and therefore not many emails exist. [Docket No. 98 at 10.] Defendants also claim that they did not produce many emails because their computer system crashed in early 2010. [Docket No. 103 at 7–8.] To undermine this contention, Plaintiff filed a declaration with attached emails from former H-1B employee Richard Agustin, which was later supplemented by a declaration from H1-B employee Erickson Mendoza. Together these two employees allege over 700 email exchanges with Defendants since 2009. [Docket Nos. 100, 120 at 5.] Defendants respond by asserting that Agustin is an exception to their general policy to communicate by phone and Mendoza is an inadvertent oversight. Defendants fail to explain why they did not produce emails from 2012, which are dated after the computer crash. These unproduced emails cause the Court concern and show that Defendants did not fully satisfy their duty to produce all of the requested emails in their possession. Accordingly, Defendants' belated production in combination with these remaining deficiencies establishes that Defendants have failed to comply with the Court's October 16 order and their discovery obligations.

2. Culpability

Sanctions are not limited to situations where noncompliance with court orders is willful or deliberate—they are proper upon a finding of either willfulness, bad faith, or fault. *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Leaf v. Cottey,* No. 1:02-CV-433-LJM-VSS, 2005 WL 2218232, at *4 (S.D. Ind. Sept. 8, 2005). These measures of culpability are

distinct from one another. The Seventh Circuit characterizes bad faith as "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order," whereas fault is unconcerned with the non-complying party's disposition. *Marrocco*, 966 F.2d at 224. Fault describes the reasonableness of the conduct. *Id.* Amounting to more than a mere mistake, fault "suggests objectively unreasonable behavior." *Brown v. Columbia Sussex Corp.,* 664 F.3d 182, 191 (7th Cir. 2011) (quoting *Long v. Steepro*, 213 F.3d 983, 985 (7th Cir. 2000)). Defendants' conduct demonstrates bad faith and fault.

Defendants claim they made "reasonable and considerable efforts at every turn" to comply with their discovery efforts. This is an overstatement. On November 20, Defendants sought an extension until November 27 to produce responsive documents. [Docket No. 73.] The Court granted Defendants' last-minute request for an extension, yet Defendants did not produce all of the responsive documents. In particular, Defendants did not produce 16,000 pages until April 2013, approximately four months after the Court-imposed deadline and a year after Plaintiff served document requests. *See Foodworks USA, Inc. v. Foodworks of Arlington Heights, LLC*, No. 10-C-1020, 2013 WL 3306196, at *9 (N.D. Ill. July 1, 2013) (failing to respond to discovery requests over a significant period of time and comply with a court order demonstrates bad faith and fault).

Even now, Defendants' production remains deficient. The record reflects that Defendants failed to fully identify all H-1B workers and produce their employment records and emails. As Plaintiff points out, the fact that Defendants were able to produce many of the responsive documents shortly after being notified that Plaintiff was seeking sanctions underscores the fact that Defendants were acting in bad faith.

Defendants blame their production deficiencies on the failing health of their principal Dhani, who reportedly has been seriously ill since February 2013. Without the direction of Dhani, Defendants claim they are unable to produce the relevant documents. Plaintiff disagrees, pointing to subsequent state lawsuits initiated against H-1B employees and Defendants' previously noted Signature Campaign, which requested employees sign a release from any wage-related claim against Defendants. Dhani's illness certainly complicated Defendants' efforts to respond to Plaintiff's discovery request, but his illness cannot fairly be used as the crutch to support Defendants' ongoing failure to produce documents. This is especially so given that Defendants were able to run a business, file lawsuits, and implement the Signature Campaign purportedly without Dhani's direction. [*See* Docket No. 150.] While the Signature Campaign is troubling, it is not a basis for sanctions in the present motion. The main thrust behind Plaintiff's motion for sanctions continues to be Defendants' untimely discovery production in violation of Court orders. Accordingly, the Magistrate Judge finds Defendants acted in bad faith and are at fault in violating their discovery obligations.

3. Prejudice

Plaintiff is prejudiced by Defendants' failure to produce the requested documents. The case has been delayed, notably in Plaintiff moving for class certification. Moreover, the requested documents are material to Plaintiff's case. For example, the LCA forms that Defendants have not produced allegedly contain fraudulent representations to the federal government regarding wages. [Docket No. 98 at 21-1.] The missing I-797 forms show which workers the government approved to be H1-B employees and when their employment began. The unproduced email communications purportedly corroborate when the workers began employment.

However, the prejudice to Plaintiff is not to the extent that Plaintiff suggests.  In a recent motion to dismiss order, the Court dismissed several of the claims in this case where such document production was relevant.  [Docket No. 129.]  Moreover, in an order following a telephonic status conference, the Court found Plaintiff's discovery requests to be too broad and ordered Plaintiff to refocus discovery.  [Docket No. 150.]  Although Defendants did not produce all the documents, the prejudice is minimized by the motion to dismiss order and subsequent order to refocus discovery.  Nevertheless, the Magistrate Judge finds sanctions appropriate under the circumstances.

4.   Type of Sanctions

Plaintiff seeks sanctions against Defendants, not Defendants' counsel.  Under Rule 37(b)(2)(C), the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Defendants argue that their belated production is substantially justified given that they are a small entity who has struggled to identify and produce responsive documents.  Moreover, they contend that Dhani's illness has further delayed production of documents.  [Docket No. 103 at 5.]  The Magistrate Judge rejects Defendants' claim that Dhani's illness absolves them of all culpability.  Defendants had from June 2012 to November 2012, which was months before the onset of Dhani's illness, to produce documents despite extensions agreed to by the parties and by the Court.  Even now Defendants' document production remains incomplete, all of which cannot fairly be attributed to Dhani's illness.  Accordingly, Plaintiff is entitled to an award of reasonable fees and costs incurred in enforcing Defendants' discovery obligations.

In determining whether other sanctions are appropriate, Rule 37 provides a non-exhaustive list of possible sanctions, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The Court considers, among other factors, "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit" when determining which sanctions to employ. *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003). Thus, "[t]he sanction imposed must be proportional to the circumstances." *Collins v. Illinois*, 554 F.3d 693, 696–98 (7th Cir. 2009).

Plaintiff seeks judgment against Defendants and, alternatively, an adverse inference that establishes the date upon which Defendants were obligated to begin paying H-1B employees as the validity date set forth in each H1-B employee's I-797 approval form. While default judgment is within the Court's discretion, it is the most severe sanction in the Court's arsenal and "should be used only in extreme situations, or when other less drastic sanctions have proven unavailing." *Med. Assurance Co. v. Weinberger*, No. 4:06-CV-117-JD, 2012 WL 4050305, at *5 (N.D. Ind. Sept. 12, 2012) (citing *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007)). The Seventh Circuit permits dismissal and default judgment as suitable sanctions under Rule 37 upon a finding of willfulness, bad faith, or fault as long as the district court "first considers and explains why lesser sanctions would be inappropriate." *Id.* For the Court to award

an adverse inference, the moving party must demonstrate that the non-complying party intentionally destroyed the missing documents in bad faith. *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010).

Defendants acted in bad faith and are at fault for their discovery violations; nevertheless, the lesser sanction of attorney's fees is more appropriate than a default judgment or an adverse inference. Defendants' most recent production includes over 16,000 pages of documents and is substantially complete for the 180 H-1B workers. At this stage it is unclear how many other H1-B workers exist. Further, Plaintiff's scope of discovery is likely narrower as a result of the Court's recent entry dismissing several of the claims, and of course Dhani's illness at least complicated Defendants' discovery production. Rather than enter a judgment or permit an adverse inference, Defendants simply need to produce any documents relevant to the remaining claims without further delay.[3] [Docket No. 150.]

### B. Motion to Strike Attorney's Fees

Defendants move to strike Plaintiff's motion for attorney's fees alleging that it includes confidential negotiations regarding settlement of the attorney's fees issue. [Docket No. 133.] Defendants argue that the Court should never have been privy to such communication and its inclusion in the motion for attorney's fees contravenes Fed. R. Evid. 408. Accordingly, they claim irreparable harm. [*Id*. at 2.] Plaintiff responds that his motion does not rely on the settlement negotiations to prove or disprove the amount of his attorney's fees. [Docket No. 139

---

[3] In July 2013, the Court heard oral argument on these discovery issues and required the parties to confer regarding production of the remaining discovery documents. In November 2013, the Court ordered for a second time that parties confer on any discovery issues remaining after the ruling on the parties' motions for dismiss. Since then, the parties have not contacted the Court regarding discovery and the Court is not aware of the current status of production. To the extent there are remaining issues, the parties may request a conference with the Court to address any pending document production.

at 4.] Instead, Plaintiff included the evidence to show that the parties complied with the Court's order of conferral. [*Id.* at 5.] Moreover, Plaintiff argues that the evidence shows that Defendants had generalized concerns regarding Plaintiff's attorney's fees and that parties had a good faith dispute necessitating the need to file a motion.

Under Fed. R. Civ. P. 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should be granted only in rare circumstances and generally are disfavored as they potentially serve only to delay. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Crowder v. Foster Wheeler, LLC*, 265 F.R.D. 368, 370 (S.D. Ind. 2009). However, when a motion to strike removes unnecessary clutter from a case, it can expedite proceedings. *Heller,* 883 F.2d at 1294.

The Court cannot admit evidence of compromise offers or negotiations to prove or disprove the validity or amount of the disputed claim. Fed. R. Evid. 408. Yet, this is not the same as submitting a motion with evidence to show conferral among the parties and the presence of a good faith dispute. This disputed evidence is not used to prove the amount of attorney's fees that Plaintiff should be awarded. Rather it shows compliance with the July 12, 2013, entry that required parties confer regarding settlement on any motion for sanctions. Pursuant to the entry, only when such efforts were unsuccessful would Plaintiff be permitted to submit a motion for attorney's fees. In submitting evidence of the negotiations between the parties, Plaintiff shows that both parties complied with the Court's conferral requirement, were unsuccessful, and thus Court intervention is appropriate. The Court will not fault Plaintiff for including information that shows an attempt of the parties to reach a settlement on reasonable fees. Accordingly, Defendant's motion to strike Plaintiff's motion for attorney's fees should be denied.

*C. Attorney's Fees*

In determining reasonable fees to award Plaintiff, the Court uses the lodestar method, which multiplies an attorney's reasonable hourly rate by the reasonable number of hours expended. *Cochran v. City of Huntington,* No. 1:05-CV-249, 2006 WL 897443, at *3 (N.D. Ind. Mar. 31, 2006). The moving party bears the burden of producing evidence of a reasonable hourly rate. *Pickett v. Sheridian Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). The opposing party then must offer evidence setting forth a good reason why a lower rate is necessary. *Id.* A reasonable amount of expended hours should exclude any "excessive, redundant, or otherwise unnecessary" hours. *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

Plaintiff contends that the following rates are reasonable: $425 per hour for senior partner Daniel Kotchen, $375 per hour for junior partner Robert Klink, $225 per hour for associates Mike von Klemperer, Justin Ervin, Eamon Redmond, and Mike Brown. [Docket No. 123 at 5–6.] While the Court finds that there may be a valid question as to the reasonableness of Kotchen's and Klink's hourly fees, Defendants do not object to them. Accordingly, the Court will not take up this matter *sua sponte*.

The Magistrate Judge is troubled by the 484.2 hours counsel Kotchen, Klink, von Klemperer, Ervin, Redmond, and Brown spent in addressing this dispute. Senior partner Kotchen alone billed 153.5 hours, while associates billed a total of 352.1 hours, and junior partner Klink billed 45.5 hours. The total request for attorney's fees and expenses on what should have been a straightforward, albeit disputed, discovery matter is an eye-popping $163,254.96. [Docket No. 140.] The request is not reasonable; it is outrageous as Defendants properly argue. [Docket No. 134 at 7.] The Court does not say this to downplay the seriousness of Defendants' violations, for it is inexcusable to violate two Court orders requiring production

of documents.  However, the Court finds Plaintiff's fee request for over $160,000 exorbitant and arguably worthy of blanket denial.  In fact, the Seventh Circuit has denied fee petitions that were grossly excessive so as to abuse the process.  *See Budget Rent-A-Car Sys., Inc. v. Consol. Equity, LLC*, 428 F.3d 717, 718 (7th Cir. 2005) (denying an award of attorney's fees in its entirety because the request was exorbitant).  Nevertheless, Defendants' violations warrant sanctions and the Magistrate Judge will not reflexively dismiss Plaintiff's counsel's request for fees.

Some flagrant requests, however, should be excluded.  Most notably, Plaintiff requests fees dating back to July 20, 2012, for Defendants' discovery violations.  Defendants did not violate the Court order compelling discovery until November 27, 2012.  Still, Kotchen billed 36.3 hours and his associates Redmond and Ervin billed 53.5 hours before November 27. [Docket No. 122-7.]  These entries are not the result of Defendants' discovery violations and should be excluded.  As such, Kotchen and Redmond's hours should be reduced and Ervin's request for fees should be excluded in its entirety.

Defendants argue that Plaintiff overstaffed and overbilled this discovery dispute.  The Magistrate Judge agrees.  Plaintiff has at least three attorneys working on this discovery dispute. These attorneys participated in co-counsel conferences several times every week, resulting in a countless number of conferral entries for which each attorney billed.  Moreover, the billing entries log every draft, revision, and review completed by each attorney on each filing.  For example, Klinck spent 7.9 hours reviewing and editing Plaintiff's sanctions brief.  [*Id*. at 5, Klinck 4/19/2013, 4/23/2013 entries.]  Kotchen spent 12.6 hours reviewing and editing the same brief.  [*Id.*, Kotchen 4/21/2013, 4/23/2013, 4/24/2013, 4/29/2013, 4/30/2013 entries.]  For a twenty-five page motion for sanctions in this rather routine discovery dispute, there is no logical

explanation as to why it would take two partners 20.5 hours to review and edit a brief written by an associate billing $225 per hour.

In another example, Kotchen spent 13.7 hours reviewing and revising Plaintiff's reply supplemental brief, while associates von Klemperer and Brown spent an additional 28.8 hours drafting and revising the same brief. [Docket No. 122-7, Kotchen 9/3/2013, 9/4/2013, 9/5/2013, 9/6/2013 entries; von Klemperer 9/3/2013, 9/4/2013, 9/6/2013 entries; Brown 8/31/2013, 9/3/2013, 9/4/2013, 9/5/2013, 9/5/2013, 9/6/2013 entries.] In total, Plaintiff's counsel billed 42.5 hours for a ten-page reply. Plaintiff provides no explanation as to how counsel's efforts are not duplicative when three attorneys spent 42.5 hours drafting and revising a ten-page reply supplemental brief. Not only is this an excessive number of hours for attorneys to be working on motions related to this discovery dispute, it is duplicative and does not support a conclusion that counsel's fee request is reasonable.

Even after taking into account the more flagrant billing practices, counsel's billing entries fail to provide a reasonable articulation of the hours expended on a particular task. Rather, the Court finds the billing entries contain a mixed bag of tasks that lack proper allocation of time. For example, on December 7, 2012, Kotchen bills 3.5 hours for the following: "prepared for hearing with the Court; conferred with E. Redmond and M. Brown regarding discovery issues; drafted and sent correspondence to J. Cento; participated in call with J. Cento." [Docket No. 122-7 at 3.] Kotchen bills for four tasks and fails to designate the time period spent on each task, leaving the Court to guess as to how he allocated his time. Some of the mixed task entries include questionable billing seemingly unrelated to the discovery dispute. For example, counsel bills for time spent preparing for the settlement conference (Kotchen 1/28/2013 entry), for conferences on a motion to compel that was never filed (Redmond 1/17/2013, 1/18/2013 entries),

and other unrelated time, including phone conferences with potential clients (Brown 4/12/2013 entry) and putative class members (Redmond 2/5/2013, 2/6/2013 entries). [Docket No. 122-7 at 4, 7.] Plaintiff's counsel also fails to provide an articulable description of their work. For example, the Court notes over ten entries that state "work on sanctions brief," and an endless number of entries with conferral or emails among co-counsel "regarding discovery issues." [*Id.*] Almost every entry lacks proper articulation and allocation of time spent, making it impossible for the Court to give any meaningful review.

Defendants also challenge Plaintiff's request for fees in connection with the 30(b)(6) deposition of Dhani. Dhani plays a crucial role in this case as the Defendants' principal and Defendants argue that Plaintiff would have deposed him regardless of their violations. However, Plaintiff's deposition topics are strictly limited to discovery matters, specifically document collection, retention, and destruction. [Docket Nos. 140-2, 140-3.] As such, fees and costs spent in connection with the 30(b)(6) deposition directly relate to the discovery missteps sanctionable under Rule 37. Accordingly, the Magistrate Judge recommends Plaintiff's counsel be awarded fees and costs associated with Dhani's 30(b)(6) deposition.

The Magistrate Judge sees no utility in attempting to address every questionable line of the 266 entries. Instead, reduction by percentage is more appropriate. *See Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000) (remanding the case back to district court to make a proper reduction by percentage given the vague and inadequate documentation of the attorney's fee petition). In *Pace v. Pottawattomie Country Club, Inc.*, Cause No. 3:07-CV-347RM, 2009 WL 4843403, at *12 (N.D. Ind. Dec. 11, 2009), the court found certain billing entries vague as they did not provide the court with enough documentation to evaluate the fee's reasonableness. The court reduced those vague entries by fifty percent. Here, the Court finds it

appropriate to reduce all counsel's remaining hours by a certain percentage as the majority of the billing entries are too vague and the expended hours too high to result in reasonable fees.

Plaintiff's fees are also duplicative. In *American Hardware Manufacturers Ass'n v. Reed Elsevier, Inc.,* No. 03 C 9421, 2008 WL 1868340 (N.D. Ill. April 25, 2008), the court reduced counsel's fees by seventy-five percent due to the duplicative work of the attorneys on a relatively simple issue. In *American Hardware,* the court held that it was excessive to award fees for six attorneys working on a five-page joint motion. *Id.* at *2. Likewise, billing over 400 hours for six attorneys in the discovery dispute presented in this case is duplicative. Even a fifty percent reduction, as utilized in *Pace*, would not result in a reasonable fee. *See, e.g., Sullen v. Midwest ISO*, No. 1:04-cv-0914-JDT-TAB, 2005 WL 4880628 (S.D. Ind. Nov. 9, 2005) (counsel ordered to pay $2,500 in fees for failing to produce documents pursuant to a court order); *Johnson v. Federal Express Corp.,* No. IP99-1377-C-Y/K, 2002 WL 362753 (S.D. Ind. Mar. 6, 2002) (ordering payment of $3,550 in attorney's fees for violating a court order to produce documents). Given the Magistrate Judge's familiarity with the discovery issues presented, fees sought by Plaintiff's counsel should be further reduced by eighty percent. Such a significant reduction is not recommended lightly. Rather, it is necessary to sufficiently address the inefficiencies of having too many attorneys work on a relatively unremarkable discovery dispute, the duplicative nature of that work, and the vague billing entries submitted to the Court. As such, the following awards should be made:

| Attorney | Hours | 80% reduction | Total Award |
|---|---|---|---|
| Daniel Kotchen | 116.3 | 23.26 | $9,885.50 |
| Robert Klinck | 45.5 | 9.1 | $3,412.50 |
| Mike von Klemperer | 107.9 | 21.58 | $4,855.50 |
| Justin Ervin[4] | 0 | 0 | $0 |

---

[4] Ervin only bills for work performed before November 27, 2012, which should be excluded under Section III.C.

| | | | |
|---|---|---|---|
| Eamon Redmond | 56.6 | 11.32 | $2,547 |
| Mike Brown | 133.3 | 26.66 | $5,998.50 |
| | | TOTAL FEES: | $26,699.00 |

**Costs:**[5]

| | |
|---|---|
| Sanctions hearing travel | $669.43 |
| Westlaw fees | $58.70 |
| 30(b)(6) deposition travel | $1,004.33 |
| TOTAL FEES AND COSTS: | $28,431.46 |

## IV. Conclusion

For the reasons stated above, the Court should grant Plaintiff's motion for sanctions against Defendants to the extent it awards reasonable attorney's fees and deny the motion to the extent it seeks judgment in his favor or an adverse inference [Docket Nos. 97, 114], and deny the Defendants' motion to strike [Docket No. 133]. The Court should grant Plaintiff's motion for attorney's fees [Docket Nos. 122, 140] to the extent it requests reasonable attorney's fees but deny the request for $163,254.96. Instead, the Magistrate Judge recommends Defendants pay fees and costs totaling $28,431.46.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: _01/29/2014_

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

---

[5] Plaintiff failed to include in his costs the $150 cancellation fee incurred for rescheduling the 30(b)(6) deposition, which Defendants apparently agreed to pay but allegedly never did. [Docket Nos. 98 at 5; 120-8.] Because it was not requested, reimbursement for this is not included in this recommendation. However, consistent with professional courtesy, it would be appropriate for Defendants to promptly reimburse the $150 if they have not already done so.

Distribution:

G. John Cento
CENTO LAW LLC
cento@centolaw.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com

Daniel Aaron Kotchen
KOTCHEN & LOW LLP
dkotchen@kotchen.com

Justin T. Ervin
KOTCHEN & LOW LLP
jervin@kotchen.com

Michael  von Klemperer
KOTCHEN & LOW LLP
1745 Kalorama Rd.,NW,
Suite 101
Washington, DC 20009

Eamon F. Redmond
KOTCHEN & LOW, LLP
eredmond@kotchen.com

Michael F. Brown
PETERSON BERK & CROSS, S.C.
mbrown@pbclaw.com

Jeffrey B. Fecht
RILEY BENNETT & EGLOFF LLP
jfecht@rbelaw.com

Bryce H. Bennett, Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com