**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| RITURAJ SINGH PANWAR and<br>MICHAEL RICHARD BAUTISTA<br>AGUSTIN,<br><br>                Plaintiffs,<br><br>                v.<br><br>ACCESS THERAPIES, INC, RN STAFF INC<br>doing business as REHABILITY CARE,<br>RAMON VILLEGAS, HARVINDER DHANI<br>MANUEL GARCIA, and RAMON<br>VILLEGAS,<br><br>                Defendants.<br>_____<br><br>RN STAFF INC,<br><br>                Counter Claimant,<br><br>                v.<br><br>RITURAJ SINGH PANWAR on behalf of<br>himself and all others similarly situated,<br><br>                Counter Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:12-cv-00619-TWP-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ENTRY ON MOTION TO CERTIFY CLASS

This matter is before the Court on a Motion to Certify Class filed by Plaintiffs Rituraj Singh Panwar ("Mr. Panwar") and Michael Richard Bautista Agustin ("Mr. Agustin") (collectively, "Plaintiffs") (Filing No. 178). Plaintiffs allege that Access Therapies, Inc., RN Staff Inc. (d/b/a Rehability Care), Ramon Villegas, Harvinder Dhani, and Manuel Garcia (collectively, "Defendants"), forced their continued labor in violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1581, *et seq.* ("TVPA"), and underpaid them in violation of the Indiana Statutory

Wage Law, Ind. Code § 22-2-5-2 ("Indiana Wage Law"). They also assert a claim for breach of contract under Indiana common law. Plaintiffs seek to represent a class of individuals who they claim were also subjected to Defendants' alleged unlawful conduct. For the reasons set forth below, Plaintiffs' Motion to Certify is **DENIED**.

## I. BACKGROUND

The facts of this case are set forth in detail in the Court's prior entry on Defendants' Motion to Dismiss ([Filing No. 129](Filing No. 129)), and thus will only be summarized in this Entry. Access Therapies and RN Staff/Rehability Care operate nationwide physical therapist placement services. Defendants recruit and hire immigrants, and sponsor these individuals for H-1B visas[1], and, in some cases, for lawful permanent resident status. Access Therapies and RN Staff share several of the same officers, including Prithvi Dhani, who is President of both Access Therapies and RN Staff, and Manuel Garcia, who is listed as an incorporator of both RN Staff and Vice President of Access Therapies.

Mr. Panwar is a citizen of India and came to the United States on a student visa. He earned a Master's degree in Kinesiology from Southeastern Louisiana University, and a second Master's degree in Hospital Management from the University of New Orleans. Following graduation, Mr. Panwar obtained an H-1B visa by accepting a position with RN Staff as a physical therapist assistant in April 2010. Although Mr. Panwar was originally hired as a physical therapist, because he had not yet passed his licensing examination he could only do work as an assistant.

Mr. Agustin is from the Philippines and earned a Bachelor's degree in Physical Therapy from Far Eastern University in Quezon City, Philippines. He applied for a position with Access

---

[1] U.S. businesses use the H-1B visa program to employ foreign workers in specialty occupations that require theoretical or practical application of a body of specialized knowledge. Unlike tourist visas, individuals are not able to apply for an H-1B visa by themselves, rather the employer must petition for the entry of the employee. *See* http://www.uscis.gov/eir/visa-guide/h-1b-specialty-occupation/h-1b-visa.

Therapies in 2009, and they agreed to hire him and sponsor his H-1B visa. Mr. Agustin was employed as a physical therapist with Access Therapies.

Both Mr. Panwar and Mr. Agustin, as well as the other employees they seek to represent, were required to sign an employment contract, which set forth the employment term and the wage, as well as a promissory note corresponding with the contract's liquidated damages/recovery of expenses provision. All of the contracts provided that if an employee left his employment before the completion of the initial term of employment, the employee was required to pay the amount of the promissory note to cover the employer's expenses and lost revenues. In May 2012 Plaintiffs filed this action alleging that Defendants failed to pay employees their contracted rate of pay, and that if an employee complained about the underpayment or sought to quit, Defendants would threaten the employees with promissory note penalties, visa loss, revocation of lawful permanent resident application sponsorship, and deportation. Plaintiffs also allege that Defendants often failed to assign employees paid positions as promised by the employment agreements, but they were unable to leave their employment because of the threat to their immigration status and the amount they would have to pay under the promissory note for breaching the employment agreement. Simply stated, Plaintiffs allege that Defendants participated in a "forced labor and underpayment scheme" in which Defendants "ensnared hundreds of individuals in an impossible situation...." *See* (Filing No. 195-3).

## II. LEGAL STANDARD

To certify a plaintiff class under Federal Rule of Civil Procedure 23, the plaintiffs must first satisfy all four elements of Rule 23(a) by demonstrating that: (1) the class is too numerous to join all members; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of those of the class members; and (4) the

representative parties will fairly and adequately represent the class. As the Seventh Circuit has noted, the plaintiffs must satisfy the trial court, "after a rigorous analysis," that the prerequisites of Rule 23(a) have been satisfied. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160–61 (1982)). If these requirements are met, the plaintiffs must also satisfy at least one subsection of Rule 23(b). Rule 23(b)(2) applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) applies if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

The parties seeking class certification bear the burden of proof in establishing each of the requirements under Rule 23. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). In deciding whether to certify a class, the court is not required to accept the allegations in the complaint as true. The court should make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap with the merits of the case. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *In re Bromine Antitrust Litigation*, 203 F.R.D. 403, 407 (S.D. Ind. 2001). In evaluating class certification, the court must take into consideration the substantive elements of the plaintiff's cause of action, inquire into the proof necessary for the various elements, and envision the form that trial on the issues would take. *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377 (S.D. Ill. 2008).

Throughout this analysis, the court bears in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See Falcon*, 457 U.S. at 155. In doing so, Rule 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (internal quotation omitted). That said, "similarities of claims and situations must be demonstrated rather than assumed." *Szabo*, 249 F.3d at 677.

### III. LEGAL ANALYSIS

**A.  Plaintiffs' Class Definition**

Plaintiffs contend that a class action is the best vehicle for adjudicating this matter. Moreover, Plaintiffs assert that the proposed Class is sufficiently defined and satisfies the requirements of Fed.R.Civ.P. 23. The original proposed class definition is as follows:

> Current and former H-1B, lawful permanent resident, and lawful permanent resident applicant employees, who worked for Defendants under potential promissory note penalty, contractual penalty, and/or potential loss of their immigration status, and/or suffered financial loss relating to Defendants' failures to pay required wages and/or visa fees from six years prior to the date of the filing of the Complaint ([Filing No. 1](Filing No. 1)) through the present, and continuing until the Defendants' unlawful conduct ceases (the "Class Period").

In response to the arguments raised by Defendants in their response brief on the motion to certify class, Plaintiffs redefined the proposed class as follows:

> Current and former H-1B, lawful permanent resident, and lawful permanent resident applicant employees, who worked for Defendants under potential promissory note penalty or contractual penalty, and whose contract included a specific wage rate, from six years prior to the date of the filing of the Complaint … through the present.

([Filing No. 195, at ECF p. 5](#)). Plaintiffs' revised definition omits reference to threats to employees' immigration status, and no longer bases the class period on the date the Defendants cease "unlawful conduct." The Court will focus its analysis primarily on the revised class definition.[2]

**B.     Ascertainability**

The Court agrees with Defendants' argument that the proposed definition does not identify a sufficiently ascertainable class because both the original and the revised proposed class definitions are overbroad.[3] The revised class definition bears little connection to the claims in this case, which is that Defendants forced employees to work for them by means of threats of serious financial harm and/or threats to their immigration status, and that they were not paid at their contractually agreed upon rate. *See* Third Amended Class Action Complaint ([Filing No. 161, at ECF p. 1](#)). The proposed definition casts a very wide net to include virtually all former and current employees of the Defendants, whether or not they remained employed with Defendants because of the alleged threat of harm, and whether or not they were paid their contractually agreed wage. "[A] proper class definition cannot be so untethered from the elements of the underlying cause of action that it wildly overstates the number of parties that could possibly demonstrate injury." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009). While not all class members need to be injured in order to certify a class, the inclusion of a great number of non-injured

---

[2] Defendants did not request leave respond to Plaintiffs' revised class definition.

[3] Defendants also argue that the original proposed class definition alternatively creates an impermissible "fail safe class." A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 825 (7th Cir. 2012). Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment. *Id.* By the Plaintiffs' originally proposed class definition, a class member would have to be an individual who signed an employment contract with an impermissible penalty (as opposed to a liquidated damages provision), and who sought to terminate the employment agreement but was prohibited from doing so because of the prospect of serious financial harm and/or threats of interference with immigration status above and beyond what is already associated with the H-1B visa program. Only if all of those qualifications are met—meaning that the plaintiff would prevail—would an employee be included in the proposed class. The use of and/or throughout the originally proposed definition creates a situation where the class is either overbroad, or creates a fail-safe class. Neither interpretation would meet the requirements for class certification.

6

plaintiffs renders the class too broad, and thus not ascertainable. *Id.* at 677 ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad. . . . [A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

Although courts generally do not address the merits of the plaintiffs' claims, it is sometimes necessary for a court to reach a conclusion on the validity of any substantive propositions that are embedded in a plaintiff's proposed class definition when making an ascertainability determination. *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 294 (S.D. Ind. 2013) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–2552 (2011); *Szabo*, 249 F.3d at 676–677). Where there is a great discrepancy between the size of the class as alleged by the plaintiff versus the number claimed by the defendant, "[a] judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would . . . resolve the disputes before deciding whether to certify the class." *Shepherd*, 295 F.R.D. at 294-95 (quoting *Szabo*, 249 F.3d at 676). In this case, Plaintiffs have not alleged that employees were forced to enter into the agreements. The Court cannot ignore the fact that Defendants' employees voluntarily entered into the employment agreements and signed the promissory notes being made fully aware of the consequences of a breach of the agreement. Without some additional actions by the Defendants, these employees would not have suffered damages simply due to the existence of the promissory note enforceable upon breach of the employment agreement. Plaintiffs' TVPA claims necessarily depend upon the infliction or threat of serious harm; the revised proposed class definition does not exclude those who were not coerced into remaining employed with Defendants by threats of harm. With respect to the Indiana Wage Statute claim, the proposed class definition would also include individuals who were paid their

7

contractual wage for time worked, meaning they also did not suffer damages from underpayment.[4] Because the proposed class definition contains a significant number of employees who would have suffered no damages from Defendants' conduct, the Court finds that the class definition does not meet the threshold requirement of ascertainability and is thus not certifiable.

**C.  Rule 23(a) Requirements**

In addition to Plaintiffs not being able to satisfy the threshold requirement of ascertainability, Defendants argue that the Plaintiffs cannot satisfy all of the requirements of Rule 23(a).  Specifically, Defendants argue that Plaintiffs cannot show the third requirement of typicality, as Mr. Panwar's and Mr. Agustin's claims are not of the same essential characteristics as the claims of the other purported class members.

Rule 23(a)(3) requires that the claims or defenses of the representatives are typical of the claims or defenses of the class.  A claim is typical if it arises from the same event, practice or course of conduct that gives rise to the claims of other class members and the class representatives' claims are based on the same legal theory and are subject to the same defenses. *Oshana*, 472 F.3d at 514.  Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representatives' claims "have the same essential characteristics as the claims of the class at large." *Id.* (quoting *Retired Chi. Police Ass'n.*, 7 F.3d at 597) (additional citations omitted).

Mr. Panwar's and Mr. Agustin's claims are based upon the assertion that they were underpaid contractually required wages for productive time, but because of the threat of

---

[4] Plaintiffs' claim under the Indiana Wage Claim Statue was originally based in part on the claim that employees were not paid for non-productive, or "benched time," during which they were not assigned paid client work.  Payment for "benched time" is required under the Immigration and Nationality Act for the H-1B visa program.  However, the Court has already dismissed Plaintiffs' wage claims as they relate to failure to pay for non-productive time, as the Indiana Wage Law is applicable only to wages for "labor or services rendered." I.C. § 22-2-9-1. (Filing No. 129).  Thus, the Court will not consider allegations that employees were regularly not-compensated for non-productive time as a basis for making the class certification determination.

deportation and/or liability under the promissory notes, Defendants prevented them from objecting to their underpayment and/or voluntarily terminating their employment. The class, as redefined by the Plaintiffs, does not reflect claims of the same essential characteristics of the representative Plaintiffs. First, the class definition includes all employees whose contract includes a specific wage requirement, whether they were underpaid or not. In addition to being overbroad, this definition includes employees who would not have claims common to Mr. Panwar and Mr. Agustin, namely that they were not paid wages owed to them under the contract. The defenses asserted by Defendants against Mr. Panwar's wage claim are also not typical to the proposed class. Defendants argue that Mr. Panwar was not paid the wage amount stated in his contract because he worked as a physical therapist assistant, not as a physical therapist. Typicality is not met for the additional reason that the defenses applicable to Mr. Panwar as a representative party are irrelevant to the rest of the class members.

Second, the revised class definition includes all employees regardless of their immigration status and whether or not such status was threatened by Defendants. Mr. Panwar and Mr. Agustin, as H-1B employees, are faced with very different immigration consequences for leaving their employment than legal residents, as H-1B employees are required to remain employed with their sponsoring employer in order to maintain their visas, while legal permanent residents are not. Thus, for example, a legal resident employee who was paid less than the contracted wage would not have the same essential claims as the named Plaintiffs because his immigration status would not be jeopardized by terminating his employment, thus there could be no claim that the employee did not complain about the underpayment or seek to voluntarily terminate his employment due to threats of deportation.

Finally, the stipulated sums owed by employees for early termination of the contracts are not all identical. The amounts stated in the contracts range from $10,000.00 to $20,000.00, and some agreements and promissory notes do not specify an amount. *See, e.g.,* Filing No. 192-66. In addition, some of the contracts allowed for proration of the amounts, while others did not. It would be impossible to determine whether potential liability under the promissory note would have deterred each employee from terminating his or her employment without an individualized assessment of each employee's subjective beliefs about his or her promissory note. *See Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) ("[S]hift[ing] the focus of [the court's] inquiry to individual class Plaintiffs' actions and subjective beliefs is misplaced and runs contrary to established law.").

Plaintiffs urge the Court to consider only "how a reasonable person from the Plaintiffs' background would respond to" the Defendants' actions. Filing No. 195, at ECF p. 8 (quoting *Nuag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. LA CV 10-01172 JAK (MLGx), 2011 WL 7095434, at *8 (C.D. Cal. Dec. 12, 2011)). However, the California district court certified the class in *Nuag-Tanedo* on the basis of finding that the class members were all Filipino and were "recruited in the same manner, paid the same fees, signed the same contracts, worked in the same state, and were subject to the same working conditions." *Id.* at *6. The threat of harm was essentially the same for all plaintiffs. That is not the case here, where the employees were recruited from various countries, the terms of the contracts were different, the promissory note amounts were different, employees did not all work in the same state, and they did not have the same working conditions. By urging a "reasonable person" standard, Plaintiffs make the assumption that all H-1B employees who worked for Defendants were of limited financial means such that the amounts they would have owed under their individual promissory notes constituted a threat of

"serious harm" sufficient to maintain a TVPA action, and that they all did not want to work for Defendants at some point after they signed the employment agreement. Thus, it would not be appropriate to apply a "reasonable person" standard to determine whether the Defendants' varying actions constituted a threat of harm for each proposed class member.

The class definition proposed by Plaintiffs lacks typicality for essentially the same reason it lacks ascertainability; it would require an examination of each class member who worked for Defendants to determine (1) the amount and the terms of the liquidated damages provision of each employment contract; (2) whether this amount and the associated terms constituted an unenforceable penalty; (3) whether the employee ever tried to terminate his or her contract, but was prevented from doing so due to the threat of serious harm of the same nature alleged by Mr. Panwar and Mr. Agustin. It is likely that there are a significant number of employees identified as potential class members by Plaintiffs that never sought to terminate their contracts, were not or could not be threatened with deportation by virtue of the permanent resident status, and for whom the liquidated damages provision did not constitute the threat of serious financial harm. Because all of the proposed class members were not subjected to the same course of conduct, resulting in differing claims and defenses than those applicable to Mr. Panwar and Mr. Agustin, Plaintiffs have failed to satisfy Rule 23(a)'s typicality requirement.

### D. Rule 23(b) Requirements

Defendants also argue that the class definition proposed by the Plaintiffs does not satisfy the requirements of Rule 23(b)(3), as they have not shown that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members. As discussed above, the Court agrees with this conclusion for the same reasons it finds that the class definition lacks ascertainability and typicality. However, Defendants ignore that a

class plaintiff may meet the requirements of either Rule 23(b)(2) or 23(b)(3), and they do not make any arguments regarding whether Plaintiffs can satisfy the requirements of Rule 23(b)(2). Nevertheless, because Plaintiffs' proposed class definitions cannot satisfy the threshold ascertainability requirement, nor the typicality requirement under Rule 23(a), the Court does not need to address whether Plaintiffs can satisfy the Rule 23(b)(2) requirements.

**E.      Court Revision of Class Definition**

Plaintiffs urge the Court to exercise its discretion to redefine the class as an alternative to denying class certification. However, the Court is unable to conceive of a class definition that would encompass all of Plaintiffs' claims and still satisfy the requirements of ascertainability and of Rule 23. *See Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) (court declined to exercise discretion to redefine class where it was "nearly impossible for [the] Court to fathom a class . . . that would be sufficiently definite."). Even the Plaintiffs' own attempt to redefine the class after Defendants filed their response brief resulted in a definition that was even less ascertainable than the originally proposed definition. Identification of employees that are similar enough to the Plaintiffs to satisfy the requirements for class certification would require an individualized review of each employee's contract, immigration status, pay history, economic status, and subjective beliefs and intentions. Because of the great number of individualized factual issues, Mr. Panwar's and Mr. Agustin's claims appear to be unmanageable as a class action. Thus, the Court declines Plaintiffs' invitation for the Court to redefine a certifiable class.

## IV.   CONCLUSION

For the forgoing reasons, the Court concludes that the Plaintiffs' proposed class definitions do not satisfy the threshold requirement of ascertainability, nor do they satisfy the typicality

requirement under Rule 23(a).  Therefore, Plaintiffs' Motion to Certify Class ([Filing No. 178](Filing No. 178)) is

**DENIED**.


**SO ORDERED.**

Date: 01/22/2015

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

G. John Cento
CENTO LAW LLC
cento@centolaw.com

Michael F. Brown
DVG LAW PARTNER LLC
mbrown@dvglawpartner.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com

Daniel Aaron Kotchen
KOTCHEN & LOW LLP
dkotchen@kotchen.com

Michael von Klemperer
KOTCHEN & LOW LLP
1745 Kalorama Rd.,NW,
Suite 101
Washington, DC 20009