UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RITURAJ SINGH PANWAR,<br>MICHAEL RICHARD BAUTISTA<br>AGUSTIN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:12-cv-00619-TWP-TAB |
| ACCESS THERAPIES, INC,<br>RN STAFF INC doing business as<br>REHABILITY CARE,<br>RAMON VILLEGAS,<br>HARVINDER  DHANI,<br>MANUEL  GARCIA,<br>RAMON  VILLEGAS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| RN STAFF INC, | ) ) | |
| Counter Claimant, | ) ) ) | |
| v. | ) ) | |
| RITURAJ SINGH PANWAR on behalf of<br>himself and all others similarly situated, | ) ) ) | |
| Counter Defendant. | ) ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Partial Summary Judgment filed by

Plaintiffs, Rituraj Singh Panwar ("Mr. Panwar") and Michael Richard Bautista Agustin ("Mr.

Agustin") (Filing No. 180), and a Cross-Motion for Summary Judgment filed by Defendants,

Access Therapies, Inc. ("Access Therapies"), RN Staff Inc. d/b/a/ Rehability Care ("RN Staff"),

Ramon Villegas ("Mr. Villegas"), Manuel Garcia ("Mr. Garcia"), and Harvinder Dhani ("Mr.

Dhani") (Filing No. 190).   Mr. Panwar and Mr. Agustin brought claims against Defendants alleging violations of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589-1590, 1593, 1595 ("TVPA"), the Indiana Statutory Wage Law, Ind. Code § 22-2-5-2 ("Wage Law"), and common law breach of contract under Indiana law.   For the reasons set forth below, Plaintiffs' motion is **DENIED** and Defendants' motion is **GRANTED**.

## I.   BACKGROUND

The following material facts are not disputed by the parties.[1]   Under the Immigration and Nationality Act ("INA"), a United States employer can petition the federal government to allow a foreign national to work in the United States as an H-1B worker.   An H-1B worker performs services in a specialty occupation that requires a bachelor's or higher degree and includes such professions as physical therapists.   Access Therapies and RN Staff operate nationwide healthcare and physical therapist placement services. Defendants recruit and hire immigrants and sponsor these individuals for H-1B visas, and, in some cases, for lawful permanent resident status.   Access Therapies and RN Staff share several of the same officers, including Prithvi Dhani, who is President and Chief Operating Officer of both Access Therapies and RN Staff, and Manuel Garcia, who is listed as an incorporator of both RN Staff and Vice President of Access Therapies.   Ramon Villegas is a recruiter and manager for both Access Therapies and RN Staff.

Mr. Panwar, a citizen of India, came to the United States on a student visa.   He earned a Master's degree in Kinesiology from Southeastern Louisiana University, and a second Master's degree in Hospital Management from the University of New Orleans.   Following graduation, Mr.

---

[1] Plaintiffs include a statement of material facts in dispute in response to Defendants' cross-motion for summary judgment; however, they do not dispute the facts themselves, but rather the implications and interpretation of those facts.  Because Defendants did not dispute the facts as presented by the Plaintiffs, there was no requirement for them to include a Statement of Material Facts in Dispute in accordance with Local Rule 56-1(d) in their response to Plaintiffs' summary judgment brief.

Panwar obtained an H-1B visa by accepting a position with RN Staff in April 2010.  Mr. Panwar was originally hired as a physical therapist.  His contract term was two years and the contract stated that he would earn between $800.00 and $1,000.00 net per week, but because he had not yet passed his permanent physical therapist licensing examination he could only do work as a physical therapist assistant.  Mr. Panwar was instead paid $21.00 per hour in this position.

Mr. Agustin is from the Philippines and earned a Bachelor's degree in Physical Therapy from Far Eastern University in Quezon City, Philippines.  He applied for a position with Access Therapies in 2009, and they agreed to hire him and sponsor his H-1B visa.  Mr. Agustin was employed as a physical therapist with Access Therapies.  His contract term was for three years and Mr. Agustin's contract stated that he would be paid between $27.00 and $35.00 per hour, and he was paid at least $27.00 per hour for physical therapist work.

Both Mr. Panwar and Mr. Agustin were required to sign employment agreements setting forth the terms of employment, as well as a separate promissory note corresponding with the contracts' liquidated damages/recovery of expenses provisions.  The employment agreements provided that if an employee left his employment before the completion of the initial term, the employee was required to pay the amount of the promissory note to cover the employer's expenses and lost revenues.  The liquidated damages provision of the contracts is triggered on the date upon which Defendants submit to the federal government a visa application known as an I-129 petition. Mr. Panwar's contract provided for a $20,000.00 liquidated damages provision, and Mr. Agustin's contract contained a $15,000.00 liquidated damages provision.  Mr. Panwar alleges that he was not paid his contracted rate of pay, and when he complained about the underpayment Defendants threatened him with enforcement of the promissory note, loss of his visa and deportation.  Mr. Agustin also alleges that he was not paid the full amount that he was entitled to under the contract,

and that Defendants denied his request to waive enforcement of the promissory note when he asked to terminate his contract nine weeks early.  Defendants sued employees who quit prior to a contract term for the amount due for liquidated damages and under the promissory note.

Mr. Panwar and Mr. Agustin originally brought their claims as a class action; however, the Court denied their motion for class certification.  (Filing No. 199.)  The Court found that the employment agreements signed by employees of Access Therapies and RN Staff, as well as the immigration status of the employees, were not sufficiently similar enough to meet the requirements for certification.  The Court also previously ruled that Mr. Panwar and Mr. Agustin could not assert claims based upon allegations that they were not paid for "benched" or non-productive time as required by the INA for H-1B visa workers because the INA does not provide for a private right of action for these types of claims.  (Filing No. 129, at ECF p. 17.)  Additional facts will be addressed below as necessary.

## II.   LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.  *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor

of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).  Because the parties do not dispute the material f3/25/2015acts in this case, the Court need only determine, based upon these undisputed facts, which party is entitled to summary judgment.

## III.  <u>DISCUSSION</u>

Mr. Panwar and Mr. Agustin have three remaining claims in this case.  First, they allege that Defendants utilized a "forced labor scheme" in violation of the TVPA by means of threats of serious harm, including financial harm through enforcement of the promissory note, threats of H-1B visa revocation and deportation, and abuse of legal process.  Second, they allege that Defendants breached their employment contracts by not paying them the total amount due under the terms of their employment agreements.  Finally, they assert claims under the Wage Law resulting from allegedly not being paid the full amount due under their contracts.  Defendants argue that they were merely enforcing their rights under the terms of the employment agreements, were complying with immigration laws, and that Plaintiffs are attempting to recharacterize their claims based upon their failure to be paid for benched time, which the Court has already dismissed.

### A.    **Trafficking Victims Protection Act Claims**

Mr. Panwar and Mr. Agustin argue that they were forced to work for Defendants by means of threats of serious harm in violation of 18 U.S.C. § 1589(a)[2].  Specifically, Mr. Panwar argues that he could not terminate his employment with the Defendants because of the existence of the

---

[2] "Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d)." 18 U.S.C. § 1589(a).

$20,000.00 promissory note, which would have constituted serious financial harm if enforced; that Defendants had a practice of filing lawsuits against former employees who terminated their contracts prior to the end of their contract terms; and that Access Therapies threatened to revoke his visa when he complained about the terms of his employment. Mr. Agustin also argues that the threat of liability under the promissory note prevented him from terminating his employment.

Plaintiffs' TVPA claims are problematic for a number of reasons.  While Plaintiffs continually refer to their employment with Access Therapies and RN Staff as a "forced labor scheme," the fact that they voluntarily entered into the employment contracts belies this characterization.  There is no evidence that Mr. Panwar or Mr. Agustin were coerced or deceived into signing the employment agreements with Defendants.  Agustin Dep. 16:6-21 (Filing No. 191-11, at ECF p. 16); Panwar Dep. 206:17-23 (Filing No. 191-2, at ECF p. 207).  In fact, Mr. Agustin testified that he had at least four other companies that he was considering when he decided to sign the contract with Access Therapies, three of which he believed did not have a liquidated damages provision in their employment contracts.  Agustin Dep. 11:9-15:12 (Filing No. 191-11, at ECF pp. 11-15).  The contract terms were plainly written, and the liquidated damages provision was made conspicuous, particularly with the use of the corresponding promissory note.  Both Mr. Panwar and Mr. Agustin understood the agreements and their obligations under the agreements, including the consequences of early termination.  Panwar Dep. 205:3-207:1 (Filing No. 191-2, at ECF pp. 207-208); Agustin Dep. 18:10-16–20:7 (Filing No. 191-16, at ECF pp. 18-20).  There was nothing that compelled Mr. Panwar or Mr. Agustin to sign the agreements with RN Staff and Access Therapies, or even enter into the H-1B visa program, besides their own choice.

The claim that the liquidated damages provision and the promissory note constituted a threat of financial harm sufficient for a finding of liability under the TVPA is not supported by the

evidence or the applicable legal principles.  An H-1B employer is not permitted to require an employee to pay a "penalty" for ceasing employment.  *See* 20 C.F.R. 655.731(c)(10)(i)(A).  However, "[t]he employer is permitted to receive bona fide liquidated damages from the H-1B nonimmigrant who ceases employment with the employer prior to the agreed date."  20 C.F.R. 655.731(c)(10)(i)(B).  The distinction between what constitutes permissible liquidated damages and a prohibited penalty is made on the basis of applicable state law, which in this case is Indiana.  20 C.F.R. 655.731(c)(10)(i)(C).  Under Indiana law, "[w]here the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty."  *Gershin v. Demming*, 685 N.E.2d 1125, 1128 (Ind. Ct. App. 1997).

Mr. Panwar and Mr. Agustin do not present any evidence or argument that the stipulated sums in the liquidated damages provisions of their employment agreements were grossly disproportionate to the losses RN Staff and Access Therapies were likely to incur if an employee terminated his contract early.  On the other hand, Defendants present the affidavit of Anmol Kapoor, an employee of Access Therapies with knowledge of both companies' operations, stating that RN Staff and Access Therapies must expend thousands of dollars to bring H-1B employees into the United States, including visa filing fees, lawyer fees, administrative costs, and local agency fees.  (Filing No. 191-16.)  Additionally, Access Therapies and RN Staff would lose out on potential profits earned from placing employees with paying clients.  Contrary to Plaintiffs' implications, there is nothing unlawful about a company seeking to maximize its profits, so long as it does so within the confines of the law.  The Court concludes that the liquidated damages provisions contained in Mr. Panwar's and Mr. Agustin's employment agreements are lawful under

both the H-1B regulations and under Indiana law.  The Court will not penalize Defendants under the TVPA for practices which they are explicitly permitted to utilize under the relevant laws.

Plaintiffs' argument that the threat of deportation constituted a threat of serious harm under the TVPA is also unavailing.  Mr. Panwar alleges that when he complained about his lack of work assignments, RN Staff threatened to revoke his visa and that he would be deported.  However, the H-1B visa program requires that nonimmigrant employees remain employed by the company that sponsored their visas.  Visa revocation is not left to the discretion of the employers; an employer is required to notify the U.S. Citizenship and Immigration Service (the "Service") if it no longer employs the H-1B visa holder that it sponsored, and the Service then issues a notice of intent to revoke the underlying H-1B petition.  8 C.F.R. 214.2(h)(11).  Whether the Plaintiffs had voluntarily or involuntarily left their employment with Defendants, the H-1B regulations would have required that their visas be revoked and they would have had to return to their home countries.  If the Court were to accept Plaintiffs' argument, then *any* H-1B employer would be in violation of the TVPA merely by complying with the requirements of the H-1B program.  This outcome is clearly not the intent of the TVPA or the H-1B visa program.  Therefore, the Court finds that the threat of visa revocation and deportation under these circumstances is not a threat of serious harm for purposes of the TVPA.

Finally, Plaintiffs allege that Defendants threatened the abuse of legal process to force them to remain employed with RN Staff and Access Therapies.  Plaintiffs repeatedly characterize RN Staff's and Access Therapies' actions against current and former employees as "abuse of legal process;" however, this legal conclusion is not supported by the evidence.  Plaintiffs conflate the "use" of legal process with the "abuse" of legal process.  The TVPA does not provide a definition of "abuse of law or the legal process;" however, Indiana law is instructive.  Under Indiana law,

abuse of legal process requires a finding that the legal process has been utilized to achieve an end other than one which the process was designed to accomplish. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996) ("A party may not be liable for abuse of process where legal process has been used to accomplish an outcome which the process was designed to accomplish."). The motive behind such action is irrelevant. *Id.*

Plaintiffs first argue that the revocation of their visas if they left Defendants' employment constituted "abuse of law or legal process" under the TVPA. As discussed above, this requirement is mandated by law, and therefore cannot also be an abuse of the legal process. There was nothing unlawful about threatening to terminate Mr. Panwar, which would ultimately result in the loss of his visa, because Indiana is an at-will employment state. Mr. Agustin admitted that he understood the requirements of the H-1B visa program, and that he would have to leave the country if he terminated his employment with Access Therapies. Agustin Dep. 37:4-21 ([Filing No. 191-11, at ECF p. 37](#)). Defendants have demonstrated that there was no unlawful use of immigration and labor law used or threatened against Mr. Panwar and Mr. Agustin.

Plaintiffs also argue that the "routine" filing of lawsuits against employees who failed to complete their contract terms in order to enforce the terms of the promissory notes constituted an abuse of legal process. However, filing lawsuits against employees who breached their employment contracts is exactly the end that the legal process at issue was designed to accomplish. It is not an abuse of legal process to enforce valid contractual rights against individuals who no longer wish to be bound by the terms of an agreement they voluntarily signed. By Plaintiffs' logic, any pursuit of damages for breach of contract would constitute an abuse of process, which would be an absurd outcome. Thus, the Court concludes that neither the compliance with immigration

laws nor the enforcement of contract rights constituted an "abuse of law or legal process" for purposes of TVPA liability.

Because Plaintiffs have not shown that they were subjected to forced labor through the imposition of or threatened imposition of serious harm, the Court concludes that Defendants did not violate the TVPA.

**B.      Breach of Contract and Indiana Statutory Wage Law Claims**

Plaintiffs' two remaining claims are directly related, as they allege that Defendants breached Plaintiffs' employment agreements by not paying them the full amount of wages they were contractually entitled to, and this failure to pay the full amount of wages owed violated the Wage Law.  The Wage Law applies to not only the frequency, but the amount an employer must pay its employees. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002).   "The term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount."  I.C. § 22-2-9-1(b).  The amount of wages owed is governed by the contract between the Plaintiffs and their respective employers.

**1.      Payment for Non-Client Activities**

Both Mr. Panwar and Mr. Agustin argue that Defendants failed to pay them for "non-client work activities" in breach of their employment agreements and in violation of the Wage Law.[3] Plaintiffs argue that they were entitled to payment for "non-client work" they allege they performed for Defendants, including training/orientation, studying for licensing exams,

---

[3] In their briefs, Plaintiffs repeatedly refer to the fact that they were not assigned client work for weeks at a time, and were not paid for this "non-productive time."  The Court has already dismissed Plaintiffs' "benching" claims because the INA does not provide for a private right of action, and found that Plaintiffs may not assert the same claims under a different cause of action.  (Filing No. 129.)  Plaintiffs are not now permitted to make such arguments in support of their breach of contract or Wage Law claims, so the Court will disregard any such factual allegations made in support of the current motion.

communicating with Defendants, completing forms, working on resumes and client applications, and attending client interviews.  Mr. Panwar and Mr. Agustin argue that these "non-client related work duties" constitute "labor" and "service" under § 22-2-9-1(b) of the Wage Law.  However, as correctly stated by Plaintiffs, the Wage Law looks to the contract between employer and employee to determine due wages.  *Settle*, 766 N.E.2d at 704 n.4.   Plaintiffs are only entitled to wages for services performed under the terms of the employment agreements.  Employees cannot unilaterally determine what activities they should or should not be paid to perform, which they attempt to do here.

Neither Mr. Panwar nor Mr. Agustin point to any provisions in the employment agreements indicating that Defendants were obligated to pay them for these activities.  Article IV of both employment agreements state that Plaintiffs would be paid "compensation for services to be performed hereunder[.]"  (Filing No. 182-4, at ECF p. 4; Filing No. 182-6, at ECF p. 4.)  The "services to be performed hereunder" are clearly specified in Article II, paragraph 1, which states in both agreements, "Employee is hereby hired to perform services for Employer as staff **physical therapist** under the direct supervision of [Employer's] client and, in the [sic] capacity, primarily to provide professional therapy services . . . ."  (Filing No. 182-4, at ECF p. 3; Filing No. 182-6, at ECF p. 3) (emphasis in originals).  There is absolutely nothing in these provisions indicating that Plaintiffs' compensation was to be for these additional "non-client duties" they are now asserting, and only indicates that they would be paid for client work.  The Court finds that Defendants did not breach Mr. Panwar's and Mr. Agustin's employment agreements by not paying them for time spent on these additional activities, and therefore concludes that there was no violation of the Wage Law for failure to pay Mr. Panwar and Mr. Agustin for non-client activities.

### 2.    Mr. Panwar's Alleged Underpayment

Mr. Panwar argues that RN Staff breached his employment agreement, and thus violated the Wage Law, by failing to pay him $800.00-1,000.00 net pay per week as specified in his employment agreement.  Defendants conceded that Mr. Panwar was never paid a weekly amount within this range; however, they assert this was due to the fact that Mr. Panwar never worked as a physical therapist as stated in the contract.  RN Staff was only able to place Mr. Panwar in physical therapist assistant positions, for which he was paid $21.00 per hour, because he was not licensed as a physical therapist.  Mr. Panwar argues that the contract does not define "physical therapist" and gives "no indication that the term excludes work as a physical therapist assistant."  (Filing No. 194, at ECF p. 19.)  Mr. Panwar attempts to use extrinsic evidence to interpret the meaning of "physical therapist" by citing to the H-1B application submitted by Defendants to the federal government.  However, the use of extrinsic evidence is not necessary when the contract terms are not ambiguous, which the Court so finds here.  *See City of Indianapolis v. Kahlo*, 938 N.E.2d 734, 744 (Ind. Ct. App. 2010) ("If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument.").

Mr. Panwar's employment agreement is clear that the parties intended Mr. Panwar to work and be compensated $800.00-1,000.00 net per week as a physical therapist, not a physical therapist assistant.  The Court is required to construe the contract as a whole, giving effect to every portion of the agreement.  *Stech v. Panel Mart, Inc.*, 434 N.E.2d 97, 100 (Ind. Ct. App. 1982).  "A recital is a part of a contract which should be considered in determining the intent of the parties as expressed in the entire document, and on occasion a recital may be a most important indication of the parties' intent."  *Id.*   The recitals of the employment agreement state, "Employee has successfully passed TOELF-IBT and NPTE examination," (Filing No. 182-4, at ECF p. 2), and

the operative language of the employment agreement repeatedly refers to the position of "physical therapist" or "PT," not a "physical therapist assistant" or "PTA." Mr. Panwar never passed his National Physical Therapist Exam ("NPTE"), only the National Physical Therapist Assistant Exam, and he only had his Physical Therapist Assistant ("PTA") license. Reading the requirement that Mr. Panwar successfully pass the NPTE in the recitals in conjunction with the references to the position of "physical therapist" throughout the operative portions of the contract clearly indicates that the parties intended the employment agreement to cover Mr. Panwar's work as a physical therapist, not a physical therapist assistant. The Court does not agree with Mr. Panwar that this additional position should be read into the contract, and his argument that the term "physical therapist" is somehow ambiguous is unavailing. Because Mr. Panwar did not satisfy the requirement that he be a licensed physical therapist, he was not entitled to be paid $800.00-1,000.00 per week for work as contemplated in the employment agreement. *See* E-mails between Panwar and RN Staff, Filing No. 191-10 ("[W]e want you to be a fully licensed PT and getting paid as a PT *rather than as a PTA* soonest [sic].") (emphasis added).

Mr. Panwar argues that RN Staff waived the requirement that he work as a physical therapist through its subsequent conduct of permitting Mr. Panwar to work as a physical therapist assistant, but that he still should have been paid the amounts specified in the employment agreement. Because the Court finds that Mr. Panwar was required to have a physical therapist license in order to work as a physical therapist, and therefore be paid a physical therapist's wage, Mr. Panwar's qualification to work as a licensed physical therapist is a condition precedent to RN Staff's obligation to pay Mr. Panwar $800.00-$1,000.00 per week. *See Anderson Prop. Mgmt., LLC v. H. Anthony Miller, Jr., LLC*, 943 N.E.2d 1286, 1291 (Ind. Ct. App. 2011) ("[A] condition precedent is a condition that must be . . . fulfilled before the duty to perform a specific obligation

arises.") (quoting *McGraw v. Marchioli*, 812 N.E.2d 1154, 1157 (Ind. Ct. App. 2004)).  RN Staff was not obligated to compensate Mr. Panwar pursuant to the terms of the employment agreement unless he performed the services as a staff physical therapist; thus the Court concludes that performing services as a physical therapist was a condition precedent to being compensated $800.00-1,000.00 per week.

Despite Mr. Panwar's failure to obtain a physical therapist license, RN Staff agreed to place him in a position for which he was licensed, which was a physical therapist assistant.  The Court agrees that RN Staff waived the original condition requiring Mr. Panwar to work as a physical therapist through the parties' course of conduct, and effectively modified the agreement. *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1050-51 (Ind. Ct. App. 2012) ("Waiver [of a condition] may be implied from the acts, omissions, or conduct of one of the parties to the contract."); *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1084 (Ind. Ct. App. 1991) ("[M]odification of a contract can be implied from the conduct of the parties.").  RN Staff agreed to place Mr. Panwar in a physical therapist assistant position rather than terminating his contract altogether.  *See* E-mails between Panwar and RN Staff, Filing No. 191-10, at ECF p. 16 ("In the meantime, we can ask Marketing to market you as a PTA so . . . you have work to look forward to.").  "A modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed." *Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998). The waiver of the contract provision requiring Mr. Panwar to hold a physical therapist license and work as a physical therapist did not serve to nullify the entire agreement, and the remaining provisions were still valid and enforceable.

In addition, the severability clause of the employment agreement states that "[i]f any of this Agreement shall be held to be invalid . . . for any reason, the remaining provisions shall continue to be valid and enforceable." (Filing No. 182-4, at ECF p. 5.)  Mr. Panwar and RN Staff continued to perform under the terms of the contract as modified by their course of conduct, and both parties acquiesced in Mr. Panwar working as a physical therapist assistant at a reduced hourly rate of $21.00 per hour.  *See Int'l Bus. Lists, Inc.*, 147 F.3d at 641 ("A contract is validly modified if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct consistent with acceptance.").  Mr. Panwar does not allege that he was not paid for the work that he did perform under the parties' modified arrangement, only that he should have been paid more.  Thus, the Court finds that there was no breach of Mr. Panwar's employment agreement and no violation of the Wage Law for the failure to pay Mr. Panwar $800.00-1,000.00 per week for work as a physical therapist assistant.

## IV.   CONCLUSION

Based upon the forgoing, the Court finds that Defendants did not engage in threats of serious harm or abuse of legal process to create a "forced labor scheme" involving Mr. Panwar's and Mr. Agustin's employment in violation of the Trafficking Victims' Protection Act.  The Court further finds that Defendants did not breach the terms of either Mr. Panwar's or Mr. Agustin's employment agreements, and did not violate the Indiana Statutory Wage Law.  Because Mr. Panwar and Mr. Agustin have not shown that they have any valid claims, the Court need not address the issue of Plaintiffs' standing as to each Defendant.  Therefore, Plaintiffs' Motion for Partial Summary Judgment (Filing No. 180) is **DENIED**, and Defendants' Cross-Motion for Summary Judgment (Filing No. 190) is **GRANTED**.  Plaintiffs' claims are **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 3/25/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael F. Brown
DVG LAW PARTNER LLC
mbrown@dvglawpartner.com

G. John Cento
CENTO LAW LLC
cento@centolaw.com

Daniel Aaron Kotchen
KOTCHEN & LOW LLP
dkotchen@kotchen.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com,lwhite@humesmith.com